SCATTERED CORPORATION, and Laura Bryant, both individually and on behalf of the Chicago Stock Exchange, Inc., Plaintiffs Below, Appellants,

v.

CHICAGO STOCK EXCHANGE, INC., Erwin E. Schulze, Homer J. Livingston, Jr., John L. Fletcher and David B. Sullivan, Defendants Below, Appellees.

No. 344, 1996.

Supreme Court of Delaware.

Submitted: June 17, 1997.
Decided: Sept. 4, 1997.
As Revised on Denial of Reargument Oct. 22, 1997.

Robert K. Payson and Arthur L. Dent, Potter Anderson & Corroon, Wilmington; Fred Foreman, Leland W. Hutchinson, Jr. (argued), Elizabeth D. Sharp and Paul A. Hybel, of Freeborn & Peters, Chicago, IL; (C. Philip Curley and Judi A. Lamble, of counsel), Robinson, Curley & Clayton, P.C., Chicago, IL, for Appellants.

R. Franklin Balotti (argued), and Todd C. Schiltz, Richards, Layton & Finger, Wilmington, for Appellees Erwin E. Schulze, Homer J. Livingston, Jr., John L. Fletcher and David J. Sullivan.

Stephen P. Lamb and Joel E. Friedlander, Lamb & Bouchard, P.A., Wilmington; (Maurice J. McSweeney and James M. Caragher, of counsel), Foley Lardner, Milwaukee, WI, for Appellees Chicago Stock Exchange, Inc.

Before VEASEY, C.J., WALSH and HARTNETT, JJ.

VEASEY, Chief Justice:

In this appeal we apply existing law to a stockholder derivative suit where a pre-suit demand was refused. In doing so we explicate the settled legal principles as they apply to these specific facts, holding that the making of a demand waives only any contention that the board was incapable of acting on the demand. A demand does not preclude a plaintiff from alleging with particularity facts creating a reason to doubt that a special committee in investigating the demand or the executive committee of the board in acting on the demand acted independently and in good faith or conducted a reasonable investigation. Here we affirm the dismissal of the action and agree with the Court of Chancery that such particularized allegations are lacking. We further agree with the trial court that discovery will not lie to buttress a defective complaint, in response to a motion to dismiss.

## The Facts

Plaintiff below-appellant Scattered Corporation is an Illinois corporation with its principal place of business in Chicago. It is a registered securities broker-dealer and a member of the defendant below-appellee Chicago Stock Exchange. Plaintiff below-appellant Laura Bryant also is a member of the Exchange. The Exchange is a Delaware non-stock corporation registered with the SEC as a national securities exchange.

The individual defendants in this action are officers of the Exchange or members of the Board of Governors of the Exchange: Chairman of the Board Erwin E. Schulze; Vice Chairman John L. Fletcher; Chief Executive Officer Homer J. Livingston, Jr., Vice President of Market Regulation Allan Bretzer and former Board member David Sullivan.

Plaintiffs allege that they were witness to, or made aware of, systemic corruption of the Exchange and its subsidiaries by the named defendants. The alleged corruption included bribery, refusal to enforce violations of rules of the Exchange by favored members, the hiring of "ghost employees," and inappropriate discipline of nonfavored employees. Plaintiffs contend that those abuses involved, were approved by or at least passively permitted by, Messrs. Schulze, Livingston and Fletcher.

In 1994, Scattered demanded in writing that the Board investigate and remedy the abuses alleged in a draft complaint accompanying the demand. In June 1994, Mr. Schulze advised Scattered in writing that (i) the Executive Committee of the Board has full authority to act for the Board between meetings of the full Board, and it appointed the Special Committee of past and current Board members to investigate the allegations contained in Scattered's demand; (ii) the Special Committee had retained independent counsel; (iii) the Special Committee and its counsel had interviewed over 25 individuals, including the individuals Scattered identified as having knowledge of the demand allegations; (iv) the chairman of the Special Committee had advised the Executive Committee that the allegations in Scattered's demand could not be substantiated; and (v) after careful consideration, the Executive Committee had

determined that there was no basis upon which to take further action with respect to Scattered's demand.[1]

In February 1995, plaintiffs filed this derivative suit alleging the same acts of wrongdoing stated in the demand, presumably invoking the doctrine of wrongful refusal of the demand. Defendants then filed a motion to dismiss and to stay discovery while the Court of Chancery considered the potentially dispositive motion to dismiss. The Court of Chancery granted defendants' motions to stay discovery[2] and to dismiss pursuant to Court of Chancery Rule 23.1,[3] holding that the complaint did not plead with particularity facts sufficient to create a reasonable doubt that the Executive Committee of the Board had properly refused plaintiffs' presuit demand.[4]

Plaintiffs appeal to this Court the orders of the Court of Chancery staying discovery and granting defendants' motion to dismiss. They argue, first, that the Court of Chancery abused its discretion when it granted defendants' motion to dismiss, and second, that the court erred as a matter of law when it barred plaintiffs from conducting further discovery on the Executive Committee's refusal of their demand.

After briefing on appeal was completed, plaintiffs filed in this Court (a) a motion for summary reversal, or in the alternative, to strike a letter submitted to this Court from counsel for the Exchange dated November 26, 1996, stating that the Special Committee was appointed by the full board and was not appointed by the Executive Committee as originally set forth in the briefs; and (b) a motion to disqualify counsel for the Exchange because it appeared that defendants' counsel was representing the Exchange and the individual board members simultaneously, raising the specter of conflict of interest.[5] We concluded that both motions raised factual issues that should be resolved by the Court of Chancery, and remanded for that determination, with appellate jurisdiction retained.[6]

In its decision on remand, the Court of Chancery concluded (a) the fact that the full Board and not the Executive Committee appointed the Special Committee was no more than a background fact and not material to the court's legal analysis or to its conclusion that the complaint should be dismissed;[7] and (b) counsel for the Exchange was not simultaneously representing both the Exchange and the individual Board members.[8]

### Pleading Standard under Court of Chancery Rule 23.1

■ A decision on a motion under Chancery Rule 23.1, whether based on demand-

---

1. It later developed that the statement in Mr. Schulze's letter that the Executive Committee appointed the Special Committee was in error, and that the full Board, in fact, appointed the Special Committee. It was the Executive Committee, however, meeting between Board meetings, that ultimately made the decision "after careful consideration" (according to Mr. Schulze's letter to plaintiffs' counsel of June 23, 1994, attached to the complaint) to refuse the demand, presumably based on the Special Committee's conclusion that the allegations were "unsubstantiated."

2. *Scattered Corp. v. Chicago Stock Exchange, Inc.,* Del. Ch., C.A. No. 14010, Jacobs, V.C. (Apr. 18, 1995).

3. **Rule 23.1 Derivative actions by shareholders.**

   In a derivative action brought by 1 or more shareholders or members to enforce a right of a corporation or of an unincorporated association, ... [t]he complaint ... shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and the reasons for the plaintiff's failure to obtain the action or for not making the effort. Ch.Ct.R. 23.1.

4. *Scattered Corp. v. Chicago Stock Exchange, Inc.,* Del.Ch., C.A. No. 14010, slip op. at 6, 1996 WL 417507 at *5, Jacobs, V.C. (July 12, 1996) [hereinafter *Scattered I* ].

5. *Scattered Corp. v. Chicago Stock Exchange, Inc.,* Del.Ch., C.A. 14010, slip op. at 1, 1997 WL 187316, Jacobs, V.C. (Apr. 7, 1997) [hereinafter *Scattered II* ].

6. *Scattered Corp. v. Chicago Stock Exchange,* Del. Supr., No. 344, 1996, Veasey, C.J. (Dec. 6, 1996) (ORDER).

7. *See supra* note 1.

8. *Scattered II, supra* note 5, at 3–5, 13, 1997 WL 187316 at *7. Plaintiffs have withdrawn their

excused or demand-refused, involves essentially a discretionary ruling on a predominantly factual issue.[9] Accordingly, a ruling by the Court of Chancery that a plaintiff in a derivative suit has not pleaded a claim of wrongful refusal of demand will be reversed only on a showing of abuse of discretion, assuming no legal error led to an erroneous holding.[10]

In its decision before remand, the Court of Chancery articulated as follows the· proper standard for determining whether a demand was wrongfully refused:

> The plaintiff in this case made a demand upon the board that was refused. In those circumstances, for this lawsuit to go forward the plaintiffs must allege with particularity facts that create a reasonable doubt that the corporation's board of directors wrongfully refused the demand. . . . In determining whether a demand was wrongly refused, this Court reviews the board's decision under traditional business judgment rule standards, which are the board's disinterest and independence and the good faith and reasonableness of its investigation. . . . By making a demand, a shareholder-plaintiff tacitly concedes the disinterest and independence of the board. . . . Therefore, in that particular context the only issues to be decided are the good faith and reasonableness of the board's investigation of the claims articulated in the demand." [11]

Next, the Court of Chancery stated plaintiffs' burden as follows: "A plaintiff claiming wrongful refusal of a demand has the burden to plead particularized facts that create a reasonable doubt . . . whether the board conducted its investigation of the claims set forth in the Demand reasonably and in good faith." [12]

These statements of law essentially follow the rubric of Delaware Supreme Court cases. In *Levine v. Smith,* this Court stated,

> [O]n a Court of Chancery Rule 23.1 motion to dismiss a derivative suit in a case of demand refused, director independence and lack of self-interest [are] conceded. Therefore, the trial court reviews the board's decision only for compliance with the traditional business judgment rule. The only relevant question is whether the directors acted in an informed manner and with due care, in a good faith belief that their action was in the best interest of the corporation.[13]

We further stated in *Levine,* " 'The Court of Chancery in the exercise of its sound discretion must be satisfied that a plaintiff has alleged facts with particularity which, taken as true, support a reasonable doubt that the challenged transaction was the product of a valid exercise of business judgment.' " [14]

But plaintiffs argue that the Court of Chancery erred as a matter of law when it concluded that a demand on an independent board of directors concedes the independence of an executive committee of the board. They contend that our review of this issue is plenary and that they have satisfied their pleading burden by alleging the following facts, among others: (a) that Messrs. Schulze, Livingston and Fletcher were all members of the Executive Committee at the time the demand was made, that they are each accused by the plaintiffs of wrongdoing and that these three individuals "had the ability to dominate and control the ten-member Executive Committee"; (b) that five members constituted a quorum of the Executive Committee, and that, although plaintiffs do not know who actually voted to reject their demand, Schulze, Livingston and Fletcher could have constituted a majority of that

---

Motion to Disqualify counsel for the Exchange, so that issue is not before us.

9. *Levine v. Smith,* Del.Supr., 591 A.2d 194, 200–01 (1991) (quoting *Grobow v. Perot,* Del.Supr., 539 A.2d 180, 186 (1988)); *see also Grimes v. Donald,* Del.Supr., 673 A.2d 1207, 1217 n. 15, and accompanying text (1996).

10. *Levine,* 591 A.2d at 214 (quoting *Grobow,* 539 A.2d at 186).

11. *Scattered I, supra* note 4, at 5–6, 1996 WL 417507 at *5 (citations omitted).

12. *Id.* at 6, 1996 WL 417507 at *5.

13. *Levine,* 591 A.2d at 197–98; *accord Grimes,* 673 A.2d at 1219; *Spiegel v. Buntrock,* Del.Supr., 571 A.2d 767, 775–76 (1990).

14. *Levine,* 591 A.2d at 210 (quoting *Aronson v. Lewis,* Del.Supr., 473 A.2d 805, 815 (1984)).

quorum and thereby unduly influenced the vote; and (c) the Executive Committee told plaintiffs of its decision not to pursue their demand on the same day that the Executive Committee received the investigatory report from the Special Committee, such quick action raising a reasonable doubt that the Executive Committee adequately considered the matter. Plaintiffs argue that these allegations are sufficient to create a reasonable doubt about the disinterestedness and independence of the Executive Committee.

The Court of Chancery's decision rests on the principle that a stockholder who makes a pre-suit demand upon the board of directors concedes the disinterestedness and independence of that board. The Court noted that the constitution of the Exchange allows the Executive Committee to "exercise all the rights, powers, authority, duties and obligations of the Board of Governors" between meetings of the full Board. By virtue of making their demand, the Court concluded, plaintiffs conceded the disinterestedness of both the full board and the Executive Committee.[15]

There are two questions implicated here: First, the standards for adjudicating demand-refused cases. Second, the fact that it was the Executive Committee, not the full Board, that acted on the recommendation of the Special Committee and refused the demand.

### Demand Waives Claim that Board Incapable of Acting on Demand

■ The principles of law applicable to demand-refused cases are explicated in a number of Supreme Court decisions. For example, it is well established that stockholders asserting a claim on behalf of the corporation must make a pre-suit demand unless the making of demand would be futile. If the stockholders make a demand, as in this case, they are deemed to have waived any claim they might otherwise have had that the board cannot independently act on the demand. In *Grimes* we said:

> If a demand is made, the stockholder has spent one—but only one—"arrow" in the "quiver." The spent "arrow" is the right to claim that demand is excused. The stockholder does not, by making demand, waive the right to claim that demand has been wrongfully refused.

Simply because the composition of the board provides no basis *ex ante* for the stockholder to claim with particularity and consistently with Rule 11 that it is reasonable to doubt that a majority of the board is either interested or not independent, it does not necessarily follow *ex post* that the board in fact **acted** independently, disinterestedly or with due care in response to the demand. A board or a committee of the board may **appear** to be independent, but may not always **act** independently. If a demand is made and rejected, the board rejecting the demand is entitled to the presumption of the business judgment rule unless the stockholder can allege facts with particularity creating a reasonable doubt that the board is entitled to the benefit of the presumption. If there is reason to doubt that the board acted independently or with due care in responding to the demand, the stockholder may have the basis *ex post* to claim wrongful refusal. The stockholder then has the right to bring the underlying action with the same standing which the stockholder would have had, *ex ante*, if demand had been excused as futile.[16]

Defendants, however, state (or overstate) the standard in terms that appear to be more sweeping than the *Grimes* rubric.[17] It is not

---

**15.** *Scattered I, supra* note 4, at 8, 1996 WL 417507 at *5.

**16.** *Grimes*, 673 A.2d at 1218–19 (footnotes and citations omitted).

**17.** For support, defendants cite a Court of Chancery decision decided before *Grimes*. *Thorpe v. CERBCO, Inc.*, Del.Ch., 611 A.2d 5, 10–11 (1991) (denying motion to dismiss and permitting inqui-

ry into self-dealing under "good faith" concept despite demand made and dictum that the "current rule"—that demand waives independence—"may be thought to exact a heavy price from shareholders who elect to try ... to employ internal corporate mechanisms ..."). The denouement of this case came in 1996. *Thorpe v. CERBCO, Inc.*, Del.Supr., 676 A.2d 436 (1996) (holding that the controlling stockholders

correct that a demand concedes independence "conclusively" and *in futuro* for all purposes relevant to the demand. *Levine* and *Spiegel* state that, in assessing whether a demand has been wrongfully refused, the Court looks only to good faith and the reasonableness of the investigation.[18] This is completely consistent with the *Grimes* teaching that a board that appears independent *ex ante* may not necessarily act independently *ex post* in rejecting a demand. Failure of an otherwise independent-appearing board or committee to act independently is a failure to carry out its fiduciary duties in good faith or to conduct a reasonable investigation. Such failure could constitute wrongful refusal.[19]

### Effect of Action by Executive Committee

■ The second issue inherent in plaintiffs' appeal is that the Executive Committee, not the full board, acted on the Special Committee's recommendation and refused the demand.

8 *Del. C.* § 141(c) permits a board of directors to pass a resolution designating one or more committees that may exercise all the powers and authority of the board of directors in the management of the business and affairs of the corporation.[20] The Exchange has done this by appointing the Executive Committee and by allowing that committee to review the investigation by the Special Committee and to decide whether or not to refuse plaintiffs' pre-suit demand. In a derivative action involving refusal of a demand, any alleged bias or self-interest on the part of the board or a committee authorized to act on that demand should become part of the court's inquiry into whether the board or committee acted independently and in good faith, or whether it conducted a reasonable investigation. If there had been particularized allegations that the Special Committee (as the investigating committee) or the Executive Committee (as the decisionmaking committee) was biased, lacked independence, or failed to conduct a reasonable investigation, such allegations could have created a reasonable doubt that demand was properly refused.[21]

That is not present in the pleading before us. In the case sub *judice*, we find no basis to disagree with the conclusion of the Court of Chancery that plaintiffs' claims that a reasonable doubt exists that the Executive Committee acted independently or that the Executive Committee was disinterested are not alleged with particularity.

Finally, plaintiffs' "facts" creating a reasonable doubt about the disinterestedness and independence of the Executive Committee are not facts at all. Rather, they are conclusory and speculative statements, suffering fatally from a paucity of particularization.[22] Such conclusory statements will not suffice to cast a reasonable doubt upon the disinterestedness, good faith or reasonableness of the Executive Committee in acting on the demand.[23]

---

usurped a corporate opportunity and breached their duty of loyalty to the corporation).

**18.** *Levine*, 591 A.2d at 212; *Spiegel*, 571 A.2d at 777.

**19.** *See Grimes*, 673 A.2d at 1218–19.

**20.** **§ 141. Board of directors; powers; number, qualifications, terms and quorum; committees; classes of directors; nonprofit corporations; reliance upon books; action without meeting; removal.**
(c)(1) The board of directors may, by resolution passed by a majority of the whole board, designate 1 or more committees, each committee to consist of 1 or more of the directors of the corporation.... Any such committee, to the extent provided in the resolution of the board of directors, or in the bylaws of the corporation, shall have and may exercise all the powers and authority of the board of directors in the management of the business and affairs of the corporation....
8 *Del.C.* § 141(c)(1).

**21.** *Grimes*, 673 A.2d at 1219.

**22.** *E.g.*, *Aronson v. Lewis*, Del.Supr., 473 A.2d 805, 815 (1984) ("There must be coupled with the allegation of control [or domination] such facts as would demonstrate that through personal or other relationships the directors are beholden to the controlling person."); *Kaplan v. Centex Corp.*, Del.Ch., 284 A.2d 119 (1971) (a plaintiff who alleges domination of a board of directors and/or control of its affairs must prove it).

**23.** *Grimes*, 673 A.2d at 1217 (one ground for the particularity requirement of Rule 23.1 is "to deter costly, baseless suits by creating a screening mechanism to eliminate claims where there is

The Court of Chancery noted the following when it considered the good faith and reasonableness of the investigation into plaintiffs' complaint: (a) the creation of the Special Committee; (b) the fact that it interviewed 25 people as well as other people the plaintiffs had suggested would corroborate their claims of wrongful conduct; (c) the findings by the Special Committee that claims made in the demand were unsubstantiated; and (d) the conclusion by the Executive Committee, after "careful consideration"[24] of the Special Committee's investigation, that there is no basis on which it could or should take action with respect to plaintiffs' allegations.[25]

Based on the foregoing actions taken by the Special Committee and the Executive Committee, the Court of Chancery concluded that "[n]one of the particularized pleaded facts supports the plaintiffs' claim that the Executive Committee violated its duty of care by relying upon the Special Committee's investigation.... To the contrary, the pleaded facts confirm that the Executive Committee's decision was the product of a valid exercise of business judgment."[26]

In its opinion after remand and after it became known that the full Board rather then the Executive Committee appointed the Special Committee to conduct the investigation into plaintiffs' complaint, the Court of Chancery concluded that

the new fact is immaterial to the reasoning or result reached in this Court's July 12, 1996 Opinion. That is because on the dismissal motion the only legal issue was whether the complaint alleged particularized facts creating a reason to doubt that the investigation of the demand was reasonable and conducted in good faith. The investigation was conducted by the Special Committee. Whether the Special Committee was created by the Executive Committee (as originally assumed) or by the full Board (the "new fact") has no logical or legal bearing on that issue.[27]

Plaintiffs give two reasons why this Court should find the Court of Chancery's decisions erroneous. First, plaintiffs contend that the full Board, by beginning an investigation and by appointing the Special Committee, may have reserved to itself the job of making an informed decision on the demand. If this is true, plaintiffs continue, then it is reasonable to infer that the Executive Committee did not have the authority to reject plaintiffs' demand because the Executive Committee cannot exercise those powers reserved to the full Board. The Court of Chancery responded to plaintiffs' argument as follows: "I conclude that the inference that plaintiffs seek to have drawn from the new fact is neither logically nor legally permissible, and in any event is not a reasonable inference. Because that inference forms the entire basis for the plaintiffs' argument, that argument fails."[28] We agree.

only a suspicion expressed solely in conclusory terms."); *see also Mount Moriah Cemetery v. Moritz*, Del.Ch., C.A. No. 11,431, 1991 WL 50149, 1991 Del.Ch. LEXIS 68, Berger, V.C. (Apr. 4, 1991) (claim for wrongful refusal not properly stated where plaintiffs could only quibble with the method of the committee's investigation and could only state in conclusory terms that the investigation was inadequate), *aff'd*, Del. Supr., No. 164,1991, 1991 WL 165558, Horsey, J. (Aug. 12, 1991) (ORDER).

24. This statement appears in Mr. Schulze's letter refusing the demand. This letter is attached to the complaint. *See supra* note 1. Accordingly, we must presume it to be true absent a particularized allegation rebutting this statement. We faced the same issue in *Levine:*

Levine's allegation that the Board "did nothing" is contradicted by the Board's letter of reply rejecting [plaintiff's] demand. The letter, attached to plaintiff's Amended Complaint, states, "following review of the matters set forth in your December 11, 1986 letter, the Board ... unanimously determined that an attempt to rescind, or litigation ... concerning [the repurchase agreement] is not in the best interests of the Corporation." ... The only reasonable inference to be drawn from this document is that the GM directors did act in an informed manner in addressing Levine's demand. The business judgment rule accords directors the presumption that they acted on an informed basis.

*Levine*, 591 A.2d at 214.

25. *Scattered I, supra* note 4, at 10, 1996 WL 417507 at *5.

26. *Id.* at 10–11, 1996 WL 417507 at *5.

27. *Scattered II, supra* note 5, at 4, 1997 WL 187316 at *2.

28. *Id.* at 7, 1997 WL 187316 at *4.

Second, plaintiffs argue that the discrepancy in the record over which body appointed the Special Committee, the full Board or the Executive Committee, raises a strong inference that the Executive Committee was covering up its real purpose of protecting committee members Livingston and Fletcher, who were named wrongdoers in the demand. Plaintiffs concede that "the importance of that misrepresentation [that the Executive Committee rather than the full Board appointed the Special Committee] depends upon facts that are not in the record...." Yet the Court of Chancery stated,

> There is no basis to infer from that single fact, or from the timing or other circumstances of its disclosure, that it exemplified a larger group of other misrepresented facts.... If plaintiffs had a factual basis to dispute Mr. Schulze's statements [made in the letter refusing plaintiffs' demand], their obligation was to plead those facts in their complaint and rely on them when opposing defendant's motion to dismiss. If plaintiffs had no such contrary facts, they cannot fill the gap by offering up improper inferences as a substitute.[29]

Similarly, this Court has stated, "Rule 23.1's command that a derivative complaint 'allege with particularity the efforts ... made by the plaintiff to obtain the action [the plaintiff] desires from the directors ... and the reasons for [the plaintiff's] failure to obtain the action ...' cannot be parsed to permit conclusory reasons alone to suffice."[30] We find plaintiffs have failed to satisfy the requirements of Rule 23.1 in that they have not carried their burden of alleging in their complaint particularized facts creating a rea-

son to doubt that the investigation of the demand was reasonable and conducted in good faith.

Accordingly, we find no basis for disturbing the conclusions made by the Court of Chancery. Its decisions both before and after remand are well-reasoned and firmly rooted in settled law. Thus, we hold that the Court of Chancery did not abuse its discretion when it granted the defendants' motion to dismiss based upon plaintiffs' failure to comply with Court of Chancery Rule 23.1.

### Allowable Discovery after Demand Refusal

■ The Court of Chancery ruled as a matter of law that plaintiffs were not entitled to limited discovery regarding rejection of their demand.[31] Because plaintiffs contest the validity of that ruling, we review this question of law de novo.[32] We will affirm the Court of Chancery's ruling unless it represents an error in formulating or applying a legal principle.[33]

■ The law in Delaware is settled that plaintiffs in a derivative suit are not entitled to discovery to assist their compliance with the particularized pleading requirement of Rule 23.1 in a case of demand refusal.[34] A plaintiff's standing to sue in a derivative suit, whether based on demand-refused or demand-excused, must be determined on the basis of the well-pleaded allegations of the complaint.[35]

■ Plaintiffs argue, however, that the situation presented in this case is unique, thus

29. *Id.* at 5–6, 1997 WL 187316 at *3.

30. *Levine,* 591 A.2d at 211 (quoting Ch.Ct.R. 23.1).

31. *Scattered Corp. v. Chicago Stock Exchange, Inc.,* Del.Ch., C.A. No. 14010, Jacobs, V.C. (Apr. 18, 1995).

32. *Nixon v. Blackwell,* Del.Supr., 626 A.2d 1366, 1375 (1993).

33. *Arnold v. Society for Sav. Bancorp, Inc.,* Del. Supr., 650 A.2d 1270, 1276 (1994).

34. *Grimes v. Donald,* Del.Supr., 673 A.2d 1207, 1216–18 nn. 11, 22 (1996) (citing *Rales v. Blas-*

*band,* Del.Supr., 634 A.2d 927, 934–35 n. 10 (1993)); *Levine v. Smith,* Del.Supr., 591 A.2d 194, 208–210 (1991) (agreeing with Court of Chancery that a shareholder plaintiff, alleging that a pre-litigation demand has been wrongfully refused, is not entitled to discovery without first satisfying the pleading requirements of Rule 23.1).

35. *Id.; see also Mount Moriah Cemetery v. Moritz,* Del.Ch., C.A. No. 11,431, 1991 WL 50149, at *2, 1991 Del.Ch. LEXIS 68, at *12, Berger, V.C. (Apr. 4, 1991), *aff'd* Del.Supr., No. 164,1991, 1991 WL 165558, Horsey, J. (Aug. 12, 1991) (ORDER).

requiring departure from the well-established rule. First, plaintiffs contend that the Executive Committee has denied them access to books, records and any other documents that would provide information on the reasons why demand was refused. Second, plaintiffs contend that the correction of "facts" surrounding the appointment of the Special Committee warrants discovery. Finally, plaintiffs argue that although the derivative demand was submitted to each member of the full Board, it was the Executive Committee that rendered the decision to refuse the demand, and the Executive Committee was "under the influence of the alleged wrongdoers, acting apparently without authority."

Plaintiffs' arguments are not persuasive. First, this Court in *Grimes* recognized the potential for difficulty plaintiffs may meet when attempting to satisfy the particularization requirement of Rule 23.1 without benefit of discovery. Yet this Court reminded the plaintiffs in that case that they have many other avenues. The "tools at hand" are available to obtain information bearing on the subject of their claims:

> [A] stockholder who makes a demand is entitled to know promptly what action the board has taken in response to the demand. A stockholder who makes a serious demand and receives only a peremptory refusal has the right to use the "tools at hand" to obtain the relevant corporate records, such as reports or minutes, reflecting the corporate action and related information in order to determine whether or not there is a basis to assert that demand was wrongfully refused. In no event may a

corporation assume a position of neutrality and take no position in response to the demand.[36]

Plaintiffs have not taken advantage of the opportunity to bring an action under 8 *Del. C.* § 220 to inspect minutes, reports and other books and records of the Exchange *targeted*[37] at the process and findings of the Board, the Special Committee and the Executive Committee in acting on this demand. On July 28, 1994, Scattered served a demand upon the Exchange seeking permission to review certain books and records. But the Court of Chancery determined at that time that an action seeking inspection of books and records under section 220 was not available to members of a non-stock corporation such as the Exchange.[38] Effective July 1, 1995, however, the General Assembly amended section 220 to close this gap identified by Scattered's Court of Chancery action. Because of the amendment, section 220 is now available to members of non-stock corporations.[39]

Meanwhile, before the new statute became effective, Scattered commenced an action in Superior Court seeking a writ of mandamus requiring the Exchange to produce an extraordinarily broad range of books and records. The mandamus action sought to compel a comprehensive inspection of all documents that could shed light on the merits of Scattered's claims, but did not specifically target the materials relating to the refusal of the pursuit demand at issue here. Applying traditional mandamus standards, not section 220 standards, the Superior Court, in its discretion, denied the petition, and that order[40] was affirmed by this

36. *Grimes,* 673 A.2d at 1218.

37. *Security First v. U.S. Die Casting & Dev.,* Del. Supr., 687 A.2d 563, 570 (1997) ("A Section 220 proceeding should result in an order circumscribed with rifled precision.").

38. *Scattered Corp. v. Chicago Stock Exchange, Inc.,* Del.Ch., 671 A.2d 874 (1994).

39. 70 *Del. Laws* c. 79 Sections 11 and 12, added to 8 *Del. C.* § 220 provisions granting to members of nonstock corporations the same rights to demand books and records as stockholders of stock corporations. According to the synopsis accompanying the bill that ultimately was

adopted (S.B. 175), these changes were in response to the decision of the Court of Chancery noted above. *Supra* n. 38.

40. The original opinion and order of the Superior Court denying writ of mandamus, *State ex rel. Scattered Corp. v. Chicago Stock Exchange, Inc.,* Del.Super., C.A. No. 95M–02–217, Quillen, J., (Oct. 28, 1995)(Order), was appealed to this Court, which remanded to the Superior Court for supplementation, with jurisdiction retained. *Scattered Corp. v. Chicago Stock Exchange, Inc.,* Del.Supr., No. 444, 1995, Veasey, C.J. (Feb. 9, 1996)(Order). A supplemental opinion was then issued by the Superior Court, *State, ex rel. Scattered Corp. v. Chicago Stock Exchange, Inc.,*

Court.[41]

In the Order affirming the Superior Court's refusal to issue the writ of mandamus, this Court noted the distinction between the traditional mandamus remedy and a section 220 remedy, emphasizing the broad discretion of the Superior Court in the former case. It was primarily on the basis of the breadth of discretion that the Superior Court's refusal of the writ was affirmed by this Court. We noted that the Superior Court could properly take into account the litigiousness of the parties and the Superior Court's skepticism about Scattered's stale attempt to gain leverage for other agenda as contrasted with a proper purpose in seeking the writ of mandamus.[42] Both the Superior Court[43] and this Court noted the availability to Scattered of a fresh section 220 demand by reason of the amendment to the statute. Specifically, we stated:

> Section 220 has now been amended to allow an action to be brought by a member of a non-stock corporation. We need not decide whether Scattered would now have a valid claim if it were to pursue the more traditional remedy of section 220, assuming it continues to desire to review the Exchange's books and records. If so, we trust that any such litigation which may ensue will be conducted in a less contentious manner so that the courts of this State are not unnecessarily drawn into what appears to be an excess of litigiousness. in light of all the contentious litigation to date, we trust it is not vain to hope that the parties will find a non-judicial basis for resolving their differences.[44]

That demand, and a section 220 action, if necessary, targeted to documents relevant to the refusal of the pre-suit demand, could

have been asserted upon the effective date of the new statute or thereafter.

Yet, according to this record, plaintiffs inexplicably did not bring such an action. Accordingly, plaintiffs cannot argue that they have used the available " 'tools at hand' to obtain the necessary information before filing a derivative action."[45] Plaintiffs' reasons why they should be granted discovery are based upon unsubstantiated inferences without corroborating facts. Accordingly, the Court of Chancery properly denied plaintiffs' request for limited discovery.

### Conclusion

The Court of Chancery neither abused its discretion when it granted defendant's motion to dismiss nor erred as a matter of law when it precluded plaintiffs from conducting additional discovery. Accordingly, the judgment of the Court of Chancery is affirmed.

---

Del.Super., C.A. No. 95M–02–017, Quillen, J. (Feb. 23, 1996)(Opinion).

**41.** *State, ex rel. Scattered Corp. v. Chicago Stock Exchange*, Del.Supr., No. 444, 1995, 1996 WL 191023, 1996 Del. LEXIS 152, Veasey, C.J. (Apr. 4, 1996) (ORDER).

**42.** *Id.* at ¶¶ 12–14.

**43.** See October 28, 1995 Opinion of the Superior Court at p. 3, ("[t]he law has been amended to create a new statutory remedy in another court which is now available if a fresh demand is deemed appropriate"); and its February 23,

1996 supplemental opinion at p. 13 ("a factor in refusing the writ [was] the existence of a new statutory remedy in Chancery if a fresh demand were deemed appropriate. Thus, not only did this petitioner have a current forum in which to seek a current remedy, so did every other member").

**44.** *State ex rel. Scattered Corp. v. Chicago Stock Exchange, supra* n. 41 at ¶ 15. Regrettably, this Court's hope for a nonjudicial basis for resolving the differences of the parties did not materialize.

**45.** *Grimes*, 673 A.2d at 1216 n. 11 and accompanying text, 673 A.2d at 1218.