MacLeod-Mancuso, Bonnie H., J.
The Plaintiff, Marc Lichtenfeld (“Lichtenfeld”), in his capacity as a shareholder in the Nominal Defendant, Biogen Idee, Inc. (“Biogen”), has brought a derivative action against the Executive Chairman of Biogen’s Board of Directors, William H. Rastetter (“Rastetter”), Biogen’s Director, Robert Pangia (“Pangia”), and Biogen’s former Executive Vice President and General Counsel, Thomas Bucknum (“Bucknum”) (collectively the “individual defendants”). Lichtenfeld has brought derivative claims against the individual defendants for: (1) breach of fiduciary duties of loyally and good faith; and (2) unjust enrichment. The individual defendants and Biogen have filed motions to dismiss Lichtenfeld’s claims.[2] Additional matters before this Court include Plaintiffs Cross Motion to Amend Complaint and Bio-gen Idee Defendants’ Motion for a Temporary Stay of Discovery. For the reasons stated herein, the Plaintiffs Cross Motion for Leave to Amend Complaint is ALLOWED, the Defendants’ Motions to Dismiss are ALLOWED, and Biogen Idee Defendants’ Motion for a Temporary Stay of Discovery is considered moot and, thus, DENIED.
BACKGROUND
At this stage of the litigation, the facts are reported in the light most favorable to the Plaintiff. Biogen is a Delaware corporation with its principal place of business in Cambridge, Massachusetts. Biogen develops, manufactures and commercializes oncology and immunology therapies. One of Biogen’s products is a multiple sclerosis drug, Tysabri.
On February 28,2005, Biogen issued a press release, which announced “a voluntary suspension in the marketing of TYSABRI(R) (natalizumab), a treatment for multiple sclerosis . . . This decision is based on very recent reports of two serious adverse events that have occurred in patients treated with TYSABRI in combination with AVONEX(R) (Interferon bet-la) in clinical trials. These events involve one fatal, confirmed case and one suspected case of progressive multifocal leukoencephalopathy (PML)...” The U.S. Food and Drug Administration (“FDA”) also issued a press release that day, which indicated that the FDA had received preliminary information about the two adverse events from Biogen on February 18, 2005. The same day these press releases were issued, Biogen’s common stock’s sales price fell from $67.28 to a low of $35.86.
Prior to the issuance of the foregoing press releases, the individual defendants sold substantial portions of their respective shares of Biogen common stock. On February 14,2005, Pangia sold 15,750 shares of Biogen common stock, gamering total proceeds of $1,055,250. On February 15, 2005, Rastetter sold 120,313 shares of Biogen common stock, garnering total proceeds of $8,148,956. On February 18, 2005, Bucknum sold 89,700 shares of Biogen common stock, garnering total proceeds of $6,020,664. All of the individual defendants’ stocks were sold at or above $67.00 per share.
On March 15, 2005, Lichtenfeld, believing that the aforementioned stock sales violated the sellers’ duties *486 of loyalty to Biogen, issued a shareholder demand letter through his counsel to Biogeris Board of Directors (the “Board”). Lichtenfeld requested that Biogen bring legal action against the individual defendants. On April 6, 2005, Biogeris counsel, Skadden, Arps, Slate, Meagher & Flom, LLP, responded to Lichtenfeld’s demand with a letter, advising Lichtenfeld that the matter had been referred to the Board, which would determine whether pursuit of legal action was in the best interests of Biogen. On April 14, 2005, Goodwin Proctor, LLP sent a letter to Lichtenfeld’s counsel, stating that it had been retained as counsel to a Special Committee (“Committee”), which the Board had formed to investigate Lichtenfeld’s allegations. On June 23, 2005, Licitenfeld, unsatisfied with Biogeris response to his demand, filed a derivative complaint, which is the subject of the Defendants’ Motions to Dismiss.
On June 30, 2005, Biogen’s counsel sent a letter to Lichtenfeld’s counsel, outlining the progress of the Committee’s investigation up to that point. According to the letter, the Committee had “interviewed approximately thirty witnesses and reviewed voluminous hard copy and electronic documents.” The letter also stated that the Committee had met four times to discuss and review matters pertinent to the investigation. Biogen requested that Lichtenfeld voluntarily dismiss his suit and “allow the Committee the additional time it needs to complete its investigation.” Lichtenfeld declined to comply with Biogen’s request.
By a letter dated August 17, 2005, the Board informed Lichtenfeld that on August 1, 2005 the Board had unanimously voted not to initiate litigation against the individual defendants because such litigation was not in the best interests of Biogen. This letter also listed additional materials that were reviewed by the Committee, including telephone and email records, the SEC 10b5-l securities trading plan entered into by Rastetter, and transcripts of testimony of ten individuals in connection with a related federal investigation conducted by the U.S. Securities and Exchange Commission (“SEC”). This letter also noted that none of the individual defendants were included in the Board’s vote not to pursue litigation.
DISCUSSION Plaintiffs Cross Motion for Leave to Amend Complaint
Lichtenfeld seeks to amend his complaint in order to cure a purported deficiency in his original complaint, which failed to allege that the Board wrongly refused to pursue litigation against the individual defendants. The Court finds that no prejudice to the individual defendants or Biogen will result from allowing Lichtenfeld to amend his original complaint. See Mathis v. Mass. Elec. Co., 409 Mass. 256, 264 (1991). Therefore, the Court allows the Plaintiffs Cross Motion for Leave to Amend Complaint pursuant to its discretion under Mass.R.Civ.P. 15(a).
Defendants’ Motions to Dismiss
The Court now turns to the Defendants’ Motions to Dismiss the Plaintiffs Complaint, as amended. Delaware law governs Lichtenfeld’s claims because Biogen was incorporated in Delaware. See Kamen v. Kemper Financial Services, Inc., 500 U.S. 90 (1991). The Board holds the power to decide when pursuing litigation is in Biogeris best interests. See Aronson v. Lewis, 473 A.2d 805, 811-12 (Del. 1984). As a prerequisite to filing a derivative suit on behalf of Biogen, Lichtenfeld had to either issue a demand letter upon the Board, requesting that the Board file suit, or show that such a demand would have been futile. Scattered Corp. v. Chicago Stock Exch, Inc., 701 A.2d 70, 74 (Del. 2000). Lichtenfeld, by law, conceded that the Board appeared independent and, therefore, demand would not have been futile when he issued his demand letter to the Board. Id. Subsequent to issuing his demand, Lichtenfeld could only file a derivative claim if the Board wrongfully refused his demand. Zapata Corp. v. Maldonado, 430 A.2d 779, 784 (1981). Lichtenfeld’s standing to pursue a derivative claim “hinges on his ability to establish that the [Biogen] Board’s rejection of his demand was wrongful.” Levine v. Smith 591 A.2d 194, 212 (Del. 1991).
The Board’s refusal to initiate litigation against the individual defendants is protected by the business judgment rule. Grimes v. Donald, 673 A.2d 1207, 1219 (Del. 1996). The business judgment rule “is a presumption that in making a [business] decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.” Aronson, 473 A.2d at 812. In order to withstand a motion to dismiss, Lichtenfeld must plead with particularized facts that create a reasonable doubt whether the Board wrongfully refused his demand. Levine, 591 A.2d at 213-15. Lichtenfeld makes two separate arguments that his demand was wrongfully refused: (1) the Board neglected his demand by conducting an unreasonably lengthy investigation, which constituted an implied and wrongful refusal of his demand; and (2) the Board unreasonably investigated his claim and acted in bad faith when it ultimately voted not to pursue litigation against the individual defendants.
Lichtenfeld argues that on June 23, 2005, when he filed his complaint, an unreasonable time had already passed for the Committee, acting on behalf of the Board, to complete its investigation. This Court need not decide, as a threshold matter, whether the Board’s investigation into Lichtenfeld’s demand was unreasonably lengthy. As to Lichtenfeld’s argument regarding an implied wrongful refusal, an unreasonably lengthy investigation would only be relevant if such delay implied that the Board failed to act on Lichtenfeld’s demand.[3] A finding of such neglect by the Board arguably would have authorized Lichtenfeld to bring his derivative claims on behalf of Biogen. See Grimes, 673 A.2d at 1218 (holding that a corporation *487 may not assume a “position of neutraliiy and take no position in response to the demand”); see Mills v. Esmark, Inc., 91 F.R.D. 70 (N.D.Ill. 1981). The Board has since made an actual refusal of Lichtenfeld’s demand by unanimous vote on August 11, 2005. The Board’s official refusal of Lichtenfeld’s demand renders Lichtenfeld’s claim of inaction moot. Accordingly, the Court’s inquiry shifts to Lichtenfeld’s claims regarding the Board’s actual refusal.
Lichtenfeld maintains that the Board acted unreasonably in its investigation and in bad faith when it ultimately voted not to pursue the requested litigation. Lichtenfeld, however, has failed to produce any evidence of bad faith or an unreasonable investigation. The length of the Board’s investigation, five months, is not sufficient evidence to find that the investigation was unreasonable without some particularized facts demonstrating that the investigation was actually delayed or obstructed by the Board. As noted above, Lichtenfeld may not rely on speculative or conclusoiy allegations of bad faith or unreasonableness, but rather must provide particularized facts supporting his allegations. Levine, 591 A.2d at 212. The Board is entitled to a presumption of good faith and reasonableness under the business judgment rule. Aronson, 473 A.2d at 812.
The Board’s power to act on behalf of Biogen is not disturbed by Lichtenfeld’s speculative allegations. All of the evidence suggests that the Board acted appropriately in response to Lichtenfeld’s demand. Such actions included: (1) setting up the Committee; (2) the Committee’s retention of separate counsel; (3) interviewing approximately thirty individuals; (4) examining telephone and email records; (5) conferrrng with the SEC; and (5) excluding the individual defendants from the investigative process and vote. No admissible evidence contradicts the legal presumption that the Board acted reasonably and in good faith. Lichtenfeld, therefore, lacks the requisite standing to bring his derivative claims. See Levine, 591 A.2d at 212. Lichtenfeld may resurrect his claims if he can find particularized facts supporting his claims.
Biogen Idee Defendants’ Motion for a Temporary Stay of Discovery
Lichtenfeld issued discovery requests upon Biogen for information related to the Board’s decision not to pursue litigation against the individual defendants. Subsequently, Biogen moved to temporarily stay discovery, arguing, in part, that discovery should be stayed pending the resolution of the Defendants’ Motions to Dismiss. Notably, Lichtenfeld may not rely on discovery to plead with the particularity required to support his claims. Scattered Corp., 701 A.2d at 77. The Defendants’ Motions to Dismiss have now been allowed, due to a failure to plead with the requisite particularity. Aronson, 473 A.2d at 812. Accordingly, the Motion for a Temporary Stay of Discovery must be denied as moot.
In his submissions, Lichtenfeld argues that he is caught in a “Catch-22" because he is unable to plead with particularity without pursuing discovery, yet discovery is not allowed unless he can plead with particularity. Lichtenfeld asserts an ostensible dilemma. Lichtenfeld’s assertion of a ”Catch-22," however, reflects an apparent unfamiliarity with the “ ‘tools at hand,’ [which] are available to obtain information bearing on the subject of [his] claims.” Scattered Corp., 701 A.2d at 78, quoting Grimes, 673 A.2d at 1218. Under both Massachusetts and Delaware law, Lichtenfeld has the right, as a stockholder of Biogen stock, to inspect certain records of Biogen’s, including excerpts from minutes reflecting action taken at a meeting of the Board. G.L.c. 156D, §16.02; 8 Del.C. §220; See Scattered Corp., 701 A.2d at 77-79. Lichtenfeld has seemingly not yet availed himself of his statutory rights as a stockholder to inspect Biogen’s records.
ORDER
For the foregoing reasons, after careful consideration of the parties’ written submissions and oral arguments, the Plaintiffs Cross Motion for Leave to Amend is ALLOWED, the Defendants’ Motions to Dismiss are ALLOWED as to all counts without prejudice, and Biogen Idee Defendants’ Motion for a Temporary Stay of Discovery is DENIED as moot.

 Thomas Bucknum, Robert Pangia, William Rastetter, and Biogen have collectively brought three motions to dismiss, which are either identical or cumulative in nature. This Memorandum refers to the motions collectively as “Defendants’ Motions to Dismiss.” Accordingly, the Court’s Order shall be applicable to each of the defendant parties’ motions to dismiss.

 Delaying the investigation could also be relevant to the reasonableness of the Board’s investigation, which is examined in the following paragraphs.