Merle THORPE, Jr. and Foundation for Middle East Peace, a District of Columbia corporation, Plaintiffs,

v.

CERBCO, INC., a Delaware corporation, Robert W. Erikson, and George Wm. Erikson, Defendants.

Civ. A. No. 11713.

Court of Chancery of Delaware, New Castle County.

Submitted: Nov. 7, 1991.
Decided: Nov. 15, 1991.

Lawrence C. Ashby, Stephen E. Jenkins, and Keith R. Sattesahn, of Ashby, McKelvie & Geddes, Wilmington, Joseph M. Hassett, George H. Mernick, III, Albert W. Turnbull, and Gregory A. Kalscheur, of Hogan & Hartson, Washington, D.C., for plaintiffs.

Howard M. Handelman, Vernon R. Proctor, and John H. Newcomer, Jr., of Bayard, Handelman & Murdoch, P.A., Wilmington, for defendant CERBCO, Inc.

Michael Hanrahan, and Carla I. Brown, of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for defendants Robert W. Erikson and George Wm. Erikson.

## OPINION

ALLEN, Chancellor

This derivative and class suit has been brought by holders of Class A common stock of CERBCO, Inc., a Delaware company. Defendants are the corporation itself and Robert W. and George Wm. Erikson. The Eriksons together own a preponderant majority of CERBCO's Class B common stock and, as a consequence, have the right to elect three of the corporation's four directors. They each serve as a director of CERBCO and an officer of the Company.

Pending is defendants' motion to dismiss the Second Amended and Supplemental Complaint ("the Amended Complaint") on grounds that it fails to state a claim upon which relief may be granted, and because the requirements of Rule 23.1 governing the institution of derivative suits were, allegedly, neither complied with nor excused.

For the reasons that follow the motion to dismiss will be granted in part and denied in part. Thus, the complaint will not be dismissed. The stay of discovery earlier ordered will be lifted.

### I.

The relevant facts, as alleged in the Amended Complaint appear as follows:

CERBCO is a holding company that owns or controls three operating companies, only one of which is profitable. CERBCO's principal asset is a controlling stock interest in another Delaware corporation, Insituform East, Incorporated. Insituform East is a sublicensee of Insituform of North America, Inc. (INA) which itself holds the North American rights to exploit proprietary rights to a process used in the *in situ* repair of buried sewer or water pipelines. (*See Insituform of North America, Inc. v. Chandler*, Del. Ch., 534 A.2d 257 (1987)).

CERBCO's capital structure results from a recapitalization that took place nine years ago. In 1982, the shareholders of CERBCO adopted a charter amendment that created Class A and Class B common stock. Each share of "old" CERBCO common stock was exchanged for one share of Class A and one share of Class B stock, which, as mentioned, elects 75% of the members of the board of directors. In other matters, the Class B stock also has greater voting power, with each share having one full vote, while each share of the Class A stock only has one-tenth of a vote. The Class B stock is convertible into Class A stock on a share-for-share basis.

This recapitalization of CERBCO was authorized by a vote at a November 19, 1982 stockholder meeting. The proxy materials prepared by CERBCO for this meeting stated that the recapitalization was in the best interests of the stockholders "since it should provide better continuity of present management" and make changes in control more difficult. (Proxy statement at 14).

At the time of the 1982 recapitalization, the Eriksons owned less than 43% of CERBCO common stock. The recapitalization itself did not increase the Erikson's control over CERBCO. But at the present time, as a result of the conversion of much of the Class B stock to Class A over the past nine years, the Eriksons own almost 80% of the Class B stock.

In March 1985, CERBCO acquired a controlling interest in Insituform East in exchange for nearly half of CERBCO's net worth. One year later, Insituform East

shareholders authorized a recapitalization transaction in which a new Insituform East Class B common stock was created in addition to the Class A common stock that already existed. The Insituform East Class B common stock has the right to elect a majority of the directors, but no right to any cash or stock dividends that the Class A stock is entitled to receive. CERBCO gave up its right to dividends and exchanged its Class A common stock in Insituform East for Class B stock and has controlled that company since.

In March 1990, the Eriksons, as individual stockholders of CERBCO, entered into a Letter of Intent with Insituform of North America for the sale of their CERBCO Class B common stock holdings for a price of $24.24 per share or a total of $6,000,-000.[1] The market price for the Class B shares at that time was $3.00 per share.

Among other things, the Letter of Intent provided that the Eriksons would "cause the respective facilities, management, books and records and key employees of CERBCO and [its] Subsidiaries" to be available for review by INA. The Letter of Intent also provided that the Eriksons would be indemnified by INA for any costs associated with a lawsuit filed because of the proposed transaction, and prohibited INA from dealing with anyone other than the Eriksons in their individual capacities.

Claiming that the Erikson's sale of control of CERBCO represented a breach of fiduciary duty and a diversion of an advantageous opportunity belong to the company itself to sell *its* control over Insituform East, the plaintiffs, on May 11, 1990, made a demand on the board of directors of CERBCO to rescind the proposed transaction, or in the alternative to demand an accounting from the Eriksons for the control premium reflected in the sale consideration. A special committee consisting of two CERBCO directors was established in July 1990 to review the demand. The spe-

cial committee prepared a report in late 1990 that set forth its findings. The members of the special committee then resigned from the CERBCO board. The CERBCO board has not made the special committee report public, or furnished a copy to plaintiffs despite requests to do so.

The proposed Erikson stock sale was discussed at the CERBCO annual meeting on July 27, 1990. The number of shares to be sold, the price of the shares, the Erikson's continued involvement in the management of CERBCO, and a number of other details about the proposed stock sale were disclosed in the proxy materials for the 1990 meeting. The litigation demand made on the board was not disclosed in these proxy materials. Specific provisions of the Letter of Intent such as those making the records of CERBCO available to INA and indemnifying the Eriksons were also not disclosed in the proxy materials.[2]

On August 24, 1990 this suit was instituted seeking to enjoin any sale of the Erikson's Class B stock or to impress the premium received in any sale with a constructive trust. On September 19, 1990, the Eriksons announced that the Letter of Intent had expired without the completion of the sale of their stock holdings to INA. They also announced that they were not continuing negotiations with INA, and that they were no longer interested in selling their stock holdings.

## II.

■ As I understand it, the Amended Complaint attempts to allege five claims. First, it claims that because of the circumstances through which they acquired corporate control (the 1982 recapitalization) the defendants hold that control in trust for all shareholders and may not realize a control premium upon sale of control without sharing that premium with others.[3] Second, it

---

1. The Eriksons were not selling their Class A common stock holdings which amounted to about 10% of the outstanding CERBCO Class A stock.

2. The Letter of Intent was not provided to the plaintiffs in this action until August 31, 1990.

3. As an independent claim this theory of recovery would appear to be moot now with respect to a prospective sale to INA, and not yet ripe with respect to any future transaction. *Stroud v. Milliken,* Del.Supr., 552 A.2d 476 (1989).

is alleged that the sale of control over Insituform East was an opportunity belonging to CERBCO and that the individual defendants breached their duty to CERBCO by precluding the Company from taking advantage of that opportunity so that they themselves might have a chance to do so. This claim seeks money damages. Third, it is claimed that the 1982 proxy statement was false or misleading and as a result the recapitalization should be rescinded. Fourth, it is asserted that the 1990 proxy statement omitted relevant matters in failing to disclose the existence of plaintiffs' demand. Lastly it is charged that the directors are causing the company to waste assets by paying the attorney's fees of the Eriksons in this litigation.[4]

### III.

Accepting the well pleaded allegations of the Amended Complaint as true, plaintiffs have, in my opinion, alleged several claims upon which, if proven, relief may be granted. The central claim that is alleged—the diversion of the opportunity to sell the Insituform East subsidiary on advantageous terms—is a corporate, not a shareholder claim. I conclude, below at pp. 9–12, that the pertinent pleading does establish good grounds to excuse the pre-suit demand contemplated by Rule 23.1. *See Aronson v. Lewis*, Del.Supr., 473 A.2d 805 (1984); *Levine v. Smith*, Del.Supr., 591 A.2d 194, 205 (1991).

■ Also with respect to the central claim, I conclude (pp. 7–9) that the claim is valid and currently ripe, even though the proposed sale has been abandoned. Accepting the allegations of the Amended Complaint as true, I cannot say on this motion that the corporation was not wrongfully injured by the Erikson's allegedly precluding it from capturing an advantageous transaction, in order to make an alternative transaction available to themselves in their personal capacities. Thus, the claim for damages gives specificity and immediacy to the legal issue framed.

### A.

On the merits, defendants claim they have a right to sell their stock for whatever price they may get and that there is no requirement that they share with others any premium that their stock, by reason of its controlling character, may demand. On their view all that is involved here is an invalid claim by plaintiffs to a share in the premium that their block of B stock justifies. Since, they say, plaintiffs have no such right, the central claim that they try to assert should be dismissed.

■ Accepting for purposes of analysis the correctness in Delaware of the legal principle that a controlling shareholder *qua* shareholder has no obligation to share a control premium, that principle would not decide this case for two related reasons. First, the complaint does not allege a simple sale of stock. The Letter of Intent contemplated that the stockholders would exercise *corporate power* in order to effectuate the change in control transaction. *See* p. 3 *supra*. While the right to inspect books and interview management of the corporation may seem a small imposition, that may not be the case. But whether it is a burden or is essentially costless to the corporation is not the point. The ability to involve corporate property, personnel or processes was (presumably) a material item in the buyers negotiation and indisputably constitutes corporate participation in the sale of control transaction. The shareholders of the corporation—that is all of the shareholders—are entitled to demand that the corporation itself not be used by a controlling shareholder in a way that facilitates a change in corporate control if that change benefits only the controlling shareholder and not the corporation itself or all of its shareholders.

■ The more significant distinction between a simple sale of a controlling block of stock and the transaction alleged in the complaint is the inference, fairly raised by

---

**4.** This last claim (Amended Complaint ¶ 38) is, in my opinion, premature and will be dismissed without prejudice.

plaintiffs' pleading, that the buyer was interested in acquiring a corporate asset (CERBCO's Insituform East stock) and was not principally interested in buying the Erikson's CERBCO stock. The complaint is capable of being read as alleging that the Erikson's exercised CERBCO corporate power to preclude an advantageous corporate transaction so that the buyer, in order to achieve its business purpose, would be required to deal with themselves as stockholders. Such behavior, if proven, is very far from the simple sale of a stockholders stock.

In my opinion if it is proven that the Eriksons did use their control over CERBCO to preclude an advantageous corporate sale of CERBCO's Insituform East stock, in which INA was or would have been interested, in order to promote the prospects of their sale of their CERBCO stock, they will have been shown to have violated their duty to CERBCO and its other shareholders. Since the allegations of the Amended Complaint are broad enough to encompass that possibility it cannot be dismissed now for failure to state a claim upon which relief may be granted.

### B.

■ I turn now to the question whether this suit must be dismissed for non-compliance with Rule 23.1. This involves a brief dilation upon a particularity of our law; the distinction, under Rule 23.1, of "demand refused" derivative litigation and "demand excused" litigation. This distinction is relevant here because when they first learned of the proposed sale of the Erikson's stock plaintiffs demanded that the board act to prevent what they saw as an impending breach of fiduciary duty. Had they not made that demand, this court would now simply ask whether the board as then constituted was independent or disinterested with respect to the transaction complained about (or whether there were facts that raised a reasonable doubt that the challenged transaction did not otherwise reflect a valid exercise of business judgment). *Le-*

*vine v. Smith,* Del.Supr., 591 A.2d 194, 205 (1991). Since the transaction challenged was allegedly the diverting to CERBCO's controlling shareholder of an advantageous opportunity to sell CERBCO's stock in Insituform East, the answer to that question would be apparent. As alleged, the transaction was a species of self-dealing by directors who could block board action. Thus, pre-suit demand would not be required to challenge it.

■ But, under the Delaware case law, once a shareholder makes such a demand upon the board to prevent or remedy an alleged breach of duty, the shareholder is deemed to have made an important concession: that the board *is* able to function on the question. *See Spiegel v. Buntrock,* Del.Supr., 571 A.2d 767, 773–76 (1990); *Levine v. Smith,* Del.Supr., 591 A.2d 194, 209 (1991); *Abbey v. Computer & Communications Tech. Corp.,* Del.Ch., 457 A.2d 368 (1983). As our Supreme Court said most recently:

> A shareholder plaintiff, by making demand upon a board before filing suit, "tacitly concedes the independence of a majority of the board to respond...." (citing *Spiegel* ).

*Levine v. Smith, supra* at 212.

In *Spiegel,* the Supreme Court explained:

> Whenever any action or inaction by a board of directors is subject to review according to the traditional business judgment rule, the issues before the Court are independence, the reasonableness of its investigation and good faith. By electing to make a demand, a shareholder plaintiff tacitly concedes the independence of a majority of the board to respond. Therefore, when a board refuses a demand, the only issues to be examined are the good faith and reasonableness of its investigation.

571 A.2d at 777.

This tacit concession appears to be not simply a factual presumption that might be rebutted by an allegation of fact[5] but a

---

5. Such as an allegation of later uncovered facts showing a self-interest of the board or an allega-

tion that a special committee of independent directors had been authorized only to investi-

conclusive presumption. Thus, the court is faced with a situation in which it appears required to look only at the good faith and reasonableness of the investigations and is required to ignore the apparent fact, as pleaded, that the action complained of (the preclusion of a CERBCO sale) was self-interested action benefitting a controlling shareholder. Thus, the current rule may be thought to exact a heavy price from shareholders who elect to try (in a context when they will not have much information) to employ internal corporate mechanisms before filing a claim on behalf of the corporation.

 The Supreme Court has made it clear that when it focuses our attention solely upon the good faith and reasonableness of the investigation in a demand refused case, it directs us to examine the two substantive elements of the business judgment rule (the trigger for the invocation of the business judgment form of review, independence, having been tacitly conceded in its analysis). This approach is premised upon the assumption that the body whose good faith and reasonableness is being reviewed (the special committee here) is the decision maker whose resulting business judgment is under review. But in some cases (*see, e.g.,* fn. 5) the reasonableness and good faith of the investigation relates to an entity (a special committee) that is not the decision maker. Thus, in such a case, *its* good faith and prudence may not alone justify deference to someone else's decision.

 Consider for example, this case. It may be that the special committee did function in good faith and prudently and that it concluded that, in the circumstances, a sale by the Eriksons to INA constituted a breach of duty by the Eriksons. One can not know that yet, but the alleged resignation of the members of the committee from the board following submission of their report is not inconsistent with that possibili-

ty. The board however has apparently not acted on that report. No action at all has been taken so far as the complaint (or the record otherwise) shows. How in these circumstances can the committee's investigation, even if it is presumed to be in good faith and reasonable, itself preclude judicial review of the claim of corporate injury by the self-interested controlling shareholder? Even if one is required to presume the independence of a majority of the board and if one assumes that the special committee operated in good faith and reasonably, nevertheless, the circumstances alleged (the failure of the board to act on the report, the failure to disclose it to stockholders after request and the resignation of the committee members from the board), if considered to be true, do raise a reasonable doubt concerning the whole board's good faith and justify my conclusion that the requisites of Rule 23.1 have been satisfied here.

### IV.

 Nor can I conclude on a motion to dismiss that a claim for breach of fiduciary duty arising out of the 1982 proxy statement fails as a matter of law or is time-barred. I acknowledge that it appears to be undisputed that the Eriksons did not directly acquire their controlling interest in the corporation as a result of the recapitalization authorized in 1982. Yet it is also plainly (admittedly) the case that that recapitalization was designed to promote that end. As to the claim that the defendants failed to disclose an intention to sell, for a premium, the control that they expected ultimately to acquire as a result of the recapitalization, I apply notice pleading standards. The allegations may prove difficult to prove given the time-delay etc., but failure of proof is a different matter than failing to state a claim. Moreover, defendants laches defense may prove factually sound, but the length of time involved does not establish laches as a mat-

---

gate and recommend to the full (conflicted) board but not to act in the matter. This second type of allegation would amount to a claim that while the board may have been able to act independently through a fully empowered special committee of independent directors (thus justifying a stockholder in making demand), the board in fact chose not to do so, thus justifying treating the board as not independent.

**12**

ter of law. *H. and S. Manufacturing Co. v. Benjamin F. Rich Co.*, Del.Ch., 164 A.2d 447, 449 (1960).

Finally, with respect to the claim directed to the 1990 election. The intervening election and the intervening resignations of the director elected by the A stockholders makes that claim not simply theoretical but imaginary. *Cf. Virginia Bankshares, Inc. v. Sandberg,* — U.S. —, 111 S.Ct. 2749, 115 L.Ed.2d 929 (1991).

For the foregoing reasons, the motion to dismiss will be denied. The stay of discovery is lifted immediately. Defendants shall produce a copy of any report prepared by the special committee or its counsel relating to the matters alleged and in the possession, custody or control of any defendant within ten days of this date. IT IS SO ORDERED.