IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ERNESTO ESPINOZA, derivatively on behalf of JPMorgan Chase & Co., | § § § | |
| Plaintiff-Appellant, | § § | No. 425, 2015 |
| v. | § § § § | Certification of Question of Law from the United States Court of Appeals for the Second Circuit |
| JAMES DIMON, DOUGLAS L. BRAUNSTEIN, MICHAEL J. CAVANAGH, ELLEN V. FUTTER, JAMES S. CROWN, DAVID M. COTE, LABAN P. JACKSON, JR., CRANDALL C. BOWLES, JAMES A. BELL, LEE R. RAYMOND, STEPHEN B. BURKE, WILLIAM C. WELDON, INA R. DREW, DAVID C. NOVAK, | § § § § § § § § § § § | Docket No. 14-754 |
| Defendants-Appellees, | § § | |
| and | § § | |
| JPMORGAN CHASE & CO., | § § | |
| Nominal Defendant-Appellee. | § | |

Submitted: August 13, 2015
Decided: September 15, 2015

Before **STRINE**, Chief Justice; **HOLLAND**, **VALIHURA**, **VAUGHN** and **SEITZ**, Justices, constituting the Court *en Banc*.

Upon Certification of Question of Law from the United States Court of Appeals for the Second Circuit: **CERTIFIED QUESTION GRANTED**.

**STRINE**, Chief Justice:

This Court has received the request from our distinguished colleagues on the United States Court of Appeals for the Second Circuit to answer the following question:

> If a shareholder demands that a board of directors investigate both an underlying wrongdoing and subsequent misstatements by corporate officers about that wrongdoing, what factors should a court consider in deciding whether the board acted in a grossly negligent fashion by focusing its investigation solely on the underlying wrongdoing?[1]

The inspiration for this question is a contention by the plaintiffs in this case that they made a demand that the board of JPMorgan Chase & Co. investigate two related issues regarding a high-profile situation, what the Second Circuit has called the "London Whale debacle."[2]

According to the Second Circuit, these issues were: 1) the failure of JPMorgan's risk management policies to prevent the trading that resulted in corporate losses; and 2) supposed false and misleading statements made by JPMorgan management in the wake of the emergence of the problem. According to the plaintiffs, the investigative committee of the JPMorgan board only made findings as to the former issue[3] although the defendants in their brief take issue with that, by arguing that what management knew when it made disclosures was

---

[1] *Espinoza ex rel. JPMorgan Chase & Co. v. Dimon*, __ F.3d __, 2015 WL 4747068, at *11 (2d Cir. Aug. 12, 2015).

[2] *Id.* at *1 ("This derivative action is one of many to arise out of the 'London Whale' trading debacle, which cost JPMorgan Chase billions.").

[3] Brief and Special Appendix for Plaintiff-Appellant at 36, *Espinoza ex rel. JPMorgan Chase & Co. v. Dimon*, __ F.3d __, 2015 WL 4747068 (2d Cir. Aug. 12, 2015).

1

the subject of several pages of the report.[4] What does appear undisputed is that the committee was comprised entirely of independent directors, was advised by experts of its own choosing, and conducted a detailed investigation, involving the review of massive amounts of materials and the conduct of many witness interviews, culminating in the issuance of a detailed report explaining why it recommended refusal of the demand.[5]

We appreciate our colleagues' concern about applying principles of Delaware law with fidelity and their willingness to ask for our input.[6] In fact, we were honored to answer two prior requests from our colleagues on the Second Circuit within the past year.[7] In that same spirit, we accept our colleagues' current request for certification and we will try to be as helpful as we can, consistent with the careful and precise manner in which the tool of answering certified questions of law should be employed. The Delaware Supreme Court rule that governs our

---

[4] Brief for Defendants-Appellees at 35, *Espinoza ex rel. JPMorgan Chase & Co. v. Dimon*, __ F.3d __, 2015 WL 4747068 (2d Cir. Aug. 12, 2015).

[5] *Espinoza*, __F.3d at __, 2015 WL 4747068, at *2–3.

[6] The Delaware Constitution grants our Court jurisdiction to consider certified questions of law. Del. Const. art. IV, § 11(8) (granting the Delaware Supreme Court jurisdiction "[t]o hear and determine questions of law certified to it by . . . a Court of Appeals of the United States . . . where it appears to the Supreme Court that there are important and urgent reasons for an immediate determination of such questions by it. The Supreme Court may, by rules, define generally the conditions under which questions may be certified to it and prescribe methods of certification.").

[7] *See NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*, __ A.3d __, 2015 WL 3896792 (Del. June 24, 2015); *Official Comm. of Unsecured Creditors of Motors Liquidation Co. v. JPMorgan Chase Bank, N.A.*, 103 A.3d 1010 (Del. 2014).

consideration of certified questions of law is Rule 41.[8]  Because this tool can cause more harm than benefit if not used with precision, Rule 41(b) contemplates that a certification will pose a specific question of law, based on a stipulated set of facts.[9] This approach allows us to focus on a relevant question of Delaware law against the backdrop of established facts, which are not the subject of dispute among the parties.  The certification request before us is not tailored in that way.  As a result, we will endeavor to be as helpful as we can be without risking giving overbroad and potentially misleading guidance because of the absence of stipulated facts, against which a precisely tailored question is framed.  Indeed, in providing an answer, we feel obliged to decline to answer the question as formulated or to try to reformulate the question more narrowly.  Instead, we provide these thoughts and an explanation of why we do not go further.

In our view, Delaware law on the relevant topic is settled, and requires that the decision of an independent committee to refuse a demand should only be set aside if particularized facts are pled supporting an inference that the committee, despite being comprised solely of independent directors, breached its duty of loyalty, or breached its duty of care, in the sense of having committed gross

---

[8] *See* Supr. Ct. R. 41(a)(ii) (allowing a United States Court of Appeals to certify a question of law to the Delaware Supreme Court).

[9] *See* Supr. Ct. R. 41(b) ("A certification will not be accepted if facts material to the issue certified are in dispute."); DONALD J. WOLFE, JR. & MICHAEL A. PITTENGER, CORPORATE AND COMMERCIAL PRACTICE IN THE DELAWARE COURT OF CHANCERY § 14.07, at 14-14 (Matthew Bender & Co. 2013) ("The question must truly be one of law, as Rule 41(b) expressly prohibits certification if facts material to the issue are disputed.").

negligence.[10]  The burden to plead gross negligence is a difficult one, particularly when, as seems to be undisputed here, the independent committee did a time-consuming investigation with the advice of its own advisors, and prepared a detailed written report of its investigation.

Under Delaware law, the determination of what constitutes gross negligence in the circumstances by definition requires a review of the relevant circumstances facing the directors charged with acting.[11]  In the typical case, our Court, albeit acting under a *de novo* standard of review, would have the benefit of a determination by our Court of Chancery as to whether the plaintiff pled facts that support an inference that the independent board committee acted with gross negligence.  If the contention of gross negligence was founded on the proposition that the committee ignored a material aspect of the demand letter, we would have

---

[10] "[T]o survive a motion to dismiss, the plaintiff stockholder asserting wrongful refusal of a demand must allege with particularity in the complaint facts that give rise to a reasonable doubt as to the good faith or reasonableness of that investigation." WOLFE & PITTENGER, *supra* note 9, § 9.02[b][3], at 9-108; *see also Levine v. Smith*, 591 A.2d 194, 207 (Del. 1991); *Spiegel v. Buntrock*, 571 A.2d 767, 777 (Del. 1990) ("[W]hen a board refuses a demand, the only issues to be examined are the good faith and reasonableness of its investigation."); *Mt. Moriah Cemetery ex rel. The Dun & Bradstreet Corp. v. Moritz*, 1991 WL 50149, at *4 (Del. Ch. Apr. 4, 1991), *aff'd*, 599 A.2d 413 (Del. 1991) (internal citations omitted) ("In deciding whether directors have made an informed decision, the standard is gross negligence.  Thus, the alleged deficiencies in the [committee's] investigation must rise to the level of gross negligence if the directors' decision is to be condemned as uninformed."); *Thorpe v. CERBCO, Inc.*, 611 A.2d 5, 11 (Del. Ch. 1991).

[11] *See Brehm v. Eisner*, 746 A.2d 244, 259 (Del. 2000); *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984); 1 R. FRANKLIN BALOTTI & JESSE A. FINKELSTEIN, THE DELAWARE LAW OF CORPORATIONS & BUSINESS ORGANIZATIONS § 4.15[A], at 4-111 (3d ed. 2014) (observing that in the decision-making context, which is governed by a gross negligence standard, "the inquiry is necessarily fact-specific").

4

the benefit of the Court of Chancery's typically learned and thoughtful consideration of that issue, and its assessment of the contextual importance of that issue in the overall scope of what the committee was charged with investigating. We would also be obliged to read the entire record relevant to the question before us, informed by adversarial briefing focusing us on what the parties view as most critical.

We are uncomfortable giving further guidance to a respected sister court about the factors that apply to an inherently contextual analysis on an abstract question such as the one posed. Although the decision framing the question provides some context, it appears from the briefs of the parties to the Second Circuit that the plaintiffs spent very little of their opening brief on this question and we have no responsible way of determining the relative importance of the supposed misstatements in the context of the overall London Whale debacle. The only way for us to actually reformulate the question would be for us to essentially have the appeal decided by us, rather than by our colleagues on the Second Circuit. Because it appears undisputed that there are no facts supporting an inference of disloyalty of any kind, the resolution of this case turns solely on a settled legal inquiry under our law—whether the trial court erred in dismissing the complaint because the plaintiffs had not pled facts supporting an inference of gross negligence.

We fear the risk of providing abstract guidance about a contextual application of principles of gross negligence when we do not have the leeway to decide the actual case, and where the question asked of us is so general. To make it more specific would necessarily make us make our own materiality decisions about the two categories to which the plaintiffs point, and their relationship. The only way we could do that is to review the complete record before the district court. In an important sense, however, we hope that our reply may be of limited aid to our colleagues. As the referral opinion makes clear, determining whether plaintiffs have pled gross negligence on the part of a committee charged with investigating a demand requires a "classic line-drawing exercise."[12] We agree with that. What we do not discern is any gap in our law that we can responsibly fill by answering the question as phrased, or coming up with a reformulated one. No doubt it is *conceivable* that an investigative committee that was charged with investigating two materially important and materially distinct subjects could be deemed grossly negligent if it did an indisputably careful job investigating one, and did no job at all of investigating the other. But, in this case, we cannot even fairly frame an abstract question, because it is neither clear to us that the supposedly distinct category the plaintiffs allege went uninvestigated (a disputed issue between the parties itself) was either distinct from the category that was indisputably

---

[12] *Espinoza*, __F.3d at __, 2015 WL 4747068, at *10.

investigated, and whether it was material, when viewed in the overall context of the "debacle." That is, the only way to determine the materiality of the issue that the plaintiffs contend went unaddressed, and whether and to what extent the committee's alleged failure to consider it supports an inference of gross negligence, is to tangle with the full record before the district court. In other words, this is not a situation where the parties and the referring court have agreed on a sufficiently precise set of agreed facts that frame a specific legal question we can answer more thoroughly in this context, without hazarding erroneous guidance that would risk prejudicing not only the parties in this case, but others who rely upon our law. The Clerk of the Court is directed to transmit this opinion to the Second Circuit.