Espinoza v. Dimon

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2014

(Argued: April 1, 2015     Decided: December 3, 2015)

Docket No. 14-1754

_____

ERNESTO ESPINOZA, Derivatively on Behalf of JPMorgan Chase & Co.,

*Plaintiff-Appellant*,

—v.—

JAMES DIMON, DOUGLAS L. BRAUNSTEIN, MICHAEL J. CAVANAGH, ELLEN V. FUTTER, JAMES S. CROWN, DAVID M. COTE, LABAN P. JACKSON, JR., CRANDALL C. BOWLES, JAMES A. BELL, LEE R. RAYMOND, STEPHEN B. BURKE, WILLIAM C. WELDON, INA R. DREW, DAVID C. NOVAK,

*Defendants-Appellees*,

JPMORGAN CHASE & CO.,

*Nominal Defendant-Appellee*,

WILLIAM H. GRAY, III,

*Defendant*.

———————

B e f o r e: KATZMANN, *Chief Judge*, POOLER and CARNEY, *Circuit Judges*.

———————

Appeal from the dismissal of a derivative action seeking to compel JPMorgan Chase & Co. to take action against the corporate officers allegedly responsible for losses related to the "London Whale" trading incident. We sought and received guidance from the Delaware Supreme Court on how Delaware law treats a stockholder's challenge to the scope of a board's investigation of his demand. With the benefit of that guidance, we find that the plaintiff in this case has not met his burden to plead facts sufficient to rebut the strong presumption that the board's decision was a valid exercise of its business judgment. Accordingly, we affirm the district court's dismissal of the complaint.

———————

GEORGE C. AGUILAR (Jay N. Razzouk, *on the brief*), Robbins Arroyo LLP, San Diego, California; Thomas G. Amon, Law Offices of Thomas G. Amon, New York, New York, *for Plaintiff-Appellant*.

RICHARD C. PEPPERMAN, II, Sullivan & Cromwell LLP, New York, New York (Daryl A. Libow, Christopher Michael Viapiano, Sullivan & Cromwell LLP, Washington, D.C., *on the brief*), *for Defendants-Appellees* James Dimon, Douglas L. Braunstein, Michael J. Cavanagh, Ina R. Drew, and *Nominal Defendant-Appellee* JPMorgan Chase & Co.

Jonathan C. Dickey, Gibson, Dunn & Crutcher LLP, New York, New York, *for Defendants-Appellees* Ellen V. Futter, James S. Crown, David M. Cote, Laban P. Jackson, Jr., Crandall C. Bowles, James A. Bell, Lee R. Raymond, Stephen B. Burke, William C. Weldon, and David C. Novak.

———————

KATZMANN, *Chief Judge*:

This is our third opinion addressing Ernesto Espinoza's derivative suit, in which he alleges that the board of JPMorgan Chase & Co. ("JPMorgan") improperly failed to investigate alleged misstatements made by JPMorgan executives regarding the "London Whale" trading incident. Espinoza, a JPMorgan stockholder, contends that the board wrongfully rejected his demand that JPMorgan take action because its investigation focused only on the underlying incident and not the executives' subsequent statements. The United States District Court for the Southern District of New York (Daniels, *J.*) dismissed Espinoza's complaint, finding that he had not pleaded sufficient facts to rebut the strong presumption that the board's decision was a valid exercise of its business judgment.

In our first opinion, we affirmed the district court's dismissal under an abuse of discretion standard, at the time the traditional standard of review for derivative actions in our circuit. *See Espinoza ex rel. JPMorgan Chase & Co. v. Dimon*, 790 F.3d 125 (2d Cir.), *order withdrawn* (Aug. 12, 2015). We reconsidered whether that standard of review was appropriate and determined that our review

should instead be *de novo*, in line with our review of other dismissals and the standard used in other courts, including in the First and Seventh Circuits and the Delaware Supreme Court. *See Espinoza ex rel. JPMorgan Chase & Co. v. Dimon*, 797 F.3d 229, 234–36 (2d Cir. 2015).

Accordingly, we then reviewed Espinoza's complaint *de novo*. We determined that Espinoza's appeal presented a question that was unclear under Delaware law, *i.e.*, how to evaluate a stockholder's challenge to the scope of a board's investigation, separate from the procedures it followed in reaching that decision. Rather than attempt to fill any potential gap in Delaware law ourselves, we certified the following question of law to the Delaware Supreme Court:

> If a shareholder demands that a board of directors investigate both an underlying wrongdoing and subsequent misstatements by corporate officers about that wrongdoing, what factors should a court consider in deciding whether the board acted in a grossly negligent fashion by focusing its investigation solely on the underlying wrongdoing?

*Id.* at 240. The Delaware Supreme Court granted our request for certification, and provided helpful guidance in its answer. *See Espinoza ex rel. JPMorgan Chase & Co. v. Dimon*, __ A.3d __, 2015 WL 5439176 (Del. Sept. 15, 2015) (hereinafter, "Delaware Response").

With the benefit of that guidance, which we are bound to follow, we now find that the plaintiff in this case has not met his burden to rebut the business judgment presumption. Accordingly, we affirm the district court's dismissal of Espinoza's complaint.

Because our previous opinion extensively discussed the background of this case, we do not repeat that history here. Instead, we focus on the legal analysis underlying our conclusion that Espinoza's complaint should be dismissed.

## DISCUSSION

### A. Delaware's Response to our Certified Question

"We receive the response to our certification 'bearing in mind that the highest court of a state has the final word on the meaning of state law.'" *Engel v. CBS, Inc.*, 182 F.3d 124, 125 (2d Cir. 1999) (quoting *Cty. of Westchester v. Comm'r of Transp.*, 9 F.3d 242, 245 (2d Cir. 1993)). The adequacy of a complaint alleging wrongful refusal of a stockholder demand is determined under the law of the state of incorporation, here, Delaware. *See RCM Sec. Fund, Inc. v. Stanton*, 928 F.2d 1318, 1326 (2d Cir. 1991).

As we noted in our previous opinion certifying a question to the Delaware Supreme Court, and as the Delaware Supreme Court emphasized in its response, our review of a wrongful refusal suit starts from the premise that the decision to initiate a lawsuit is an internal corporate matter within the board's discretion. Any plaintiff attempting to bring a derivative suit therefore bears the "difficult" burden to plead facts sufficient to rebut the strong presumption that the board's decision not to take action was a valid exercise of its business judgment. Delaware Response at *2. As the Delaware Supreme Court discussed in *Aronson v. Lewis*:

> The business judgment rule is an acknowledgment of the managerial prerogatives of Delaware directors under [Del. Code Ann. tit. 8, §] 141(a). It is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company. Absent an abuse of discretion, that judgment will be respected by the courts. The burden is on the party challenging the decision to establish facts rebutting the presumption.

473 A.2d 805, 812 (Del. 1984) (citations omitted), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244, 253 (Del. 2000).

The Delaware Supreme Court's response to our certified question also underscores that the subject of our review is not the merits of JPMorgan's decision to refuse Espinoza's demand; rather, we consider only whether the plaintiff has

pleaded sufficient facts to suggest that the board's decision was unreasonable or not made in good faith, in the context of all of the factors that the board had to consider. *See* Delaware Response at *2 ("Delaware law on the relevant topic is settled, and requires that the decision of an independent committee to refuse a demand should only be set aside if particularized facts are pled supporting an inference that the committee, despite being comprised solely of independent directors, breached its duty of loyalty, or breached its duty of care, in the sense of having committed gross negligence."); *id.* at *2 n.10 ("[T]o survive a motion to dismiss, the plaintiff stockholder asserting wrongful refusal of a demand must allege with particularity in the complaint facts that give rise to a reasonable doubt as to the good faith or reasonableness of that investigation.'" (quoting Wolfe & Pittenger, *Corporate and Commercial Practice in the Del. Court of Chancery* § 9.02[b][3], at 9–108 (Matthew Bender & Co. 2013)). This approach is consistent with the view of Delaware courts that judges are ill-suited to second-guess board decisions. *See In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 124 (Del. Ch. 2009) (observing that Delaware's focus on the "decision-making process rather than on a substantive evaluation of the merits of the decision . . . follows

7

from the inadequacy of the Court, due in part to a concept known as hindsight bias, to properly evaluate whether corporate decision-makers made a 'right' or 'wrong' decision") (footnote omitted).

Accordingly, to meet his burden at the motion to dismiss stage, a plaintiff alleging wrongful refusal of a demand must plead facts supporting a plausible inference that the board's decision not to take action was a result of gross negligence, defined under Delaware law as "conduct that constitutes reckless indifference or actions that are without the bounds of reason." *McPadden v. Sidhu*, 964 A.2d 1262, 1274 (Del. Ch. 2008). As this Court has noted, "few, if any, plaintiffs surmount this obstacle." *RCM Sec. Fund, Inc.*, 928 F.2d at 1328.

## B.     Delaware's Approach Applied to this Case

With these principles of Delaware law in mind, we find that Espinoza has not met his burden to survive the defendants' motion to dismiss. JPMorgan's investigation into the entire London Whale incident was exhaustive. The board created a Review Committee composed of three outside board members, who retained independent counsel and an expert advisor to assist in the investigation. The Review Committee also oversaw a management Task Force, also assisted by

8

separate independent counsel. Their efforts resulted in the publication of two extensive written reports, a 129-page report prepared by the Task Force and a shorter report compiled by the Review Committee, and led to many of the changes demanded by Espinoza, including clawbacks, reductions in compensation, and reformed internal guidelines and controls. This case is therefore distinguishable from those in which a board, faced with similar demands, conducted only a half-hearted investigation, peremptorily stopped the investigation, or did nothing with the results. *See, e.g., Rich ex rel. Fuqi Int'l, Inc. v. Yu Kwai Chong*, 66 A.3d 963, 973, 979 (Del. Ch. 2013) (denying the defendants' motion to dismiss where the special committee investigating the plaintiff's demand held no meetings, released no reports, and eventually was left with no members); *Thorpe v. CERBCO, Inc.*, 611 A.2d 5, 8–11 (Del. Ch. 1991) (denying the defendants' motion to dismiss where the members of the special litigation committee resigned after producing a report, the corporation never showed the contents of the report to stockholders, and the directors never formally responded to the plaintiff's demand letter).

Moreover, under Delaware law, the board was not required to send Espinoza a detailed letter explaining its refusal with a point-by-point response to each of the five claims he raised in his demand letter. *See, e.g., Baron v. Siff*, No. 15152, 1997 WL 666973, at \*3 (Del. Ch. Oct. 17, 1997) ("The refusal letter's failure to state that the Board held a meeting and failure to contain a point-by-point response to all allegations in the demand letter does not stand for the proposition that the Board did not consider the demand before refusing it. . . . The Board's detailed responses to several of plaintiff's allegations reveal its familiarity with the issues plaintiff raised."). The minimal requirements for boards contemplating stockholder demands are consistent with "a central tenet of Delaware corporate law, that there is 'no single blueprint a board must follow to fulfill its duties,' including with respect to stockholder demands." *Ironworkers Dist. Council of Philadelphia & Vicinity Ret. & Pension Plan v. Andreotti*, No. 9714-VCG, 2015 WL 2270673, at \*26 n.254 (Del. Ch. May 8, 2015) (quoting *Barkan v. Amsted Indus., Inc.*, 567 A.2d 1279, 1286 (Del. 1989)). For example, in *Levine v. Smith*, 591 A.2d 194, 214 (Del. 1991), *overruled on other grounds by Brehm*, 746 A.2d 244 at 253, the Court of Chancery found that the "only reasonable inference to be drawn" from the

10

board's five-line reply letter advising the stockholder that it had "review[ed] . . . the matters" set forth in the stockholder's demand letter was that the board "did act in an informed manner in addressing Levine's demand." In this case, by describing the nature of its investigation and the remedial steps taken as a result, JPMorgan's four-page refusal letter thus far exceeded the minimum required.

As the Delaware Supreme Court observed in its response, "No doubt it is *conceivable* that an investigative committee that was charged with investigating two materially important and materially distinct subjects could be deemed grossly negligent if it did an indisputably careful job investigating one, and did no job at all of investigating the other," but the critical question is the "contextual importance of that [allegedly uninvestigated] issue in the overall scope of what the committee was charged with investigating." Delaware Response at *2. In other words, whether JPMorgan's board discharged its duty to investigate Espinoza's demand depends on whether the "supposedly distinct category [he] allege[s] went uninvestigated . . . was . . . distinct from the category that was indisputably investigated, and whether it was material, when viewed in the overall context of the debacle." *Id.* at *3.

11

Reviewing the record in light of the Delaware Supreme Court's response, we note that investigating the allegedly "materially false/misleading statements and omissions" made by JPMorgan executives was just one of five claims raised in Espinoza's demand letter, and bringing legal action against the alleged wrongdoers was but one of the many remedies that Espinoza demanded. J.A. 69–70. It is also clear from the Task Force report, cited in JPMorgan's response to Espinoza, that the board was well aware of the executives' statements referenced in Espinoza's letter, *see* J.A. 340–41, and that the board investigated the extent of the executives' knowledge at the time the statements were made as part of its overall inquiry, *see* J.A. 334; 339; 361. After conducting "[a]n evaluation of the claims against potential defendants and the likelihood of a recovery of damages," the board determined that "litigation would not be in the best interests of" JPMorgan. J.A. 85. JPMorgan's response, together with the Task Force report, thus directly contradicts Espinoza's contention that the board was recklessly indifferent to the claims he raised or unreasonable in refusing his demand. Accordingly, we find that Espinoza has not met his burden to rebut the strong presumption of the business judgment rule, as defined by Delaware law.

In addition to recognizing that Delaware law rejects judicial second-guessing when a board has made a decision on a matter of internal corporate affairs, we also note two practical considerations. First, as we observed in our previous opinion, to require boards to detail a response to every issue raised in a demand letter could risk incentivizing plaintiffs to include a laundry list of potential claims, each of which boards would have to respond to, no matter how meritless. *See Espinoza*, 797 F.3d at 240; *cf. Levine*, 591 A.2d at 214 ("While a board of directors has a duty to act on an informed basis in responding to a demand . . . , there is obviously no prescribed procedure that a board must follow.").

Second, providing additional detail in a refusal letter could expose the corporation to regulatory or other legal risks, and the board is entitled to—and typically, required to—mitigate that risk in deciding how to respond to a stockholder's demand. Indeed, the board cited the risk of adverse legal action against JPMorgan as one of its reasons not to pursue litigation. *See* J.A. 85 (listing "[t]he effect of litigation brought by the Company on the Company's position in third-party litigation, regulatory investigations, and potential enforcement

13

proceedings" as a factor in deciding "that litigation would not be in the best interests" of JPMorgan). As the Court of Chancery has observed:

> A board may in good faith refuse a shareholder demand to begin litigation even if there is substantial basis to conclude that the lawsuit would eventually be successful on the merits. It is within the bounds of business judgment to conclude that a lawsuit, even if legitimate, would be excessively costly to the corporation or harm its long-term strategic interests.

*In re infoUSA, Inc. S'holders Litig.*, 953 A.2d 963, 986 (Del. Ch. 2007).

For the foregoing reasons, we conclude that Espinoza has not sufficiently rebutted the presumption that JPMorgan's board acted in good faith in responding to his demand letter, and we accordingly AFFIRM the district court's dismissal of his complaint.