# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

MANCINE DAHLE and ALEXANDRA )
SMILEY, derivatively on behalf of R.R. )
DONNELLEY & SONS COMPANY, )
                                )
             Plaintiffs, )
                                )
       v. )   C.A. No. 2019-0136-SG
                                )
JOHN C. POPE, DANIEL L. KNOTTS, )
IRENE M. ESTEVES, SUSAN M. )
GIANINNO, TIMOTHY R. )
MCLEVISH, JAMIE MOLDAFSKY and )
P. CODY PHIPPS, )
                                )
             Defendants, )
                                )
       and )
                                )
R.R. DONNELLEY & SONS )
COMPANY, a Delaware corporation, )
                                )
      Nominal Defendant. )

## MEMORANDUM OPINION

Date Submitted: October 30, 2019
Date Decided: January 31, 2020

Blake A. Bennett, of COOCH AND TAYLOR, P.A., Wilmington, Delaware; OF COUNSEL: Jeffrey M. Norton, of NEWMAN FERRARA LLP, New York, New York; Werner R. Kranenburg, KRANENBURG, London, United Kingdom, *Attorneys for Plaintiffs.*

Edward B. Micheletti, Lilianna Anh P. Townsend, and Mary T. Reale, of SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, Wilmington, Delaware, *Attorneys for Defendants and Nominal Defendant.*

GLASSCOCK, Vice Chancellor

Delaware's common law of corporations makes it clear that when a stockholder makes a demand upon the company board to take legal action, she is conceding that the directors are able to bring their business judgment to bear to consider that demand. If the board fails to take the action demanded, and the stockholder then wishes to pursue the matter derivatively on behalf of the corporation, she cannot successfully assert that the derivative action is justified because the board is unable to consider the matter free of disabling conflict; that is the very concession the stockholder is deemed to have made by making the demand in the first instance. Instead, she can only proceed derivatively if she can plead with sufficient particularity that the board has declined to comply with the demand wrongfully, that is, in bad faith or with gross negligence. Because this is a daunting, often disabling, pleading burden, potential stockholder litigants often eschew demands in order to facilitate a pleading that demand should be excused. No doubt this common-law approach to demands is in vindication of a balance of interest that our courts have found appropriate, a balancing I need not address further here.

Here, the Plaintiffs wish to sue certain directors of a Delaware corporation derivatively, on behalf of the company. They seek in the pleadings to demonstrate that demand is excused. The Defendants demur. They contend that a litigation demand was in fact made, and rejected, by the board. And because the Plaintiffs have not pled that the refusal was wrongful, the Complaint must be dismissed.

The Plaintiffs do not dispute that if a demand on the board was made, they are not entitled to proceed derivatively under the facts pled in the Complaint. Instead, they contend that the letter they sent the board demanding action, which to my eyes looks like a litigation demand on the board, is not a demand. They rely in part on lack of an explicit threat of litigation absent board action consistent with their demand. They also rely on a recitation in the demand letter averring that the demand letter is *not* a litigation demand letter, which recitation they contend is self-probative of the position asserted, an argument that has been referred to as the Magritte Defense.[1]

Fortunately for me, the Plaintiffs' counsel here—representing another client—sent a near identical demand letter to another corporate board, and raised an identical defense to dismissal in response to the defendants there making the same argument as the Defendants here. In a scholarly examination, Vice Chancellor McCormick found that the uncanny resemblance between the demand letter there and a litigation demand was no coincidence; for purposes of our law, the demand letter was a litigation demand.[2] I adopt the well-reasoned analysis by the Vice Chancellor, and accordingly the same conclusion: The Plaintiffs made a demand;

---

[1] *Solak ex rel Ultragenyx Pharmaceutical, Inc. v. Welch*, 2019 WL 5588877, *4 (Del. Ch. Oct. 30, 2019) (citing *Dahle v. Pope*, 2019 WL 5260364, at *1 (Del. Ch. Oct. 17, 2019)).

[2] In other words, the uncanny resemblance was of the Clark Kent/Superman variety.

they have failed to allege wrongful refusal of that demand; therefore the Motion to Dismiss is granted. My reasoning follows.

## I. BACKGROUND

I draw the facts from the Verified Shareholder Derivative Complaint (the "Complaint"),[3] the documents incorporated therein, and from relevant pre-suit communications between the parties.[4]

Nominal Defendant R.R. Donnelley & Sons Company ("R.R. Donnelley" or the "Company") is a Delaware corporation headquartered in Chicago, Illinois.[5]

Defendants John C. Pope, Daniel L. Knotts, Irene M. Esteves, Susan M. Gianinno, Timothy R. McLevish, Jamie Moldafsky, and P. Cody Phipps (collectively, the "Defendants" or the "Director Defendants") are directors of R.R. Donnelley.[6] Knotts is the Company's Chief Executive Officer.[7] Thus, I refer to Pope, Esteves, Gianinno, McLevish, Moldafsky, and Phipps as the "Non-Employee Director Defendants."

---

[3] Verified Shareholder Derivative Compl. for Breach of Fiduciary Duty, Unjust Enrichment, and Waste of Corporate Assets, Docket Item ("D.I.") 1 ("Compl.").

[4] *City of Tamarac Firefighters' Pension Tr. Fund v. Corvi*, 2019 WL 549938, at *2 n.3 (Del. Ch. Feb. 12, 2019) (citing authorities for the proposition that the Court may consider pre-suit communications for Rule 23.1 purposes); *see also Yaw v. Talley*, 1994 WL 89019, at *7–8 (Del. Ch. Mar. 2, 1994) (considering pre-suit communications).

[5] Compl., ¶ 5.

[6] *Id.* ¶¶ 6–12.

[7] *Id.* ¶ 7.

Plaintiffs Mancine Dahle and Alexandra Smiley were at all relevant times holders of R.R. Donnelley common stock.[8]

In October 2016, R.R. Donnelley, a marketing and communications company, completed the spinoff of two businesses that split the Company into three publicly traded companies.[9] Effective as of the spinoff date, the Company and its board of directors (the "Board") revised its compensation program (the "Compensation Program") for the Board.[10] The Company included this information regarding board compensation in its Schedule 14A, filed with the Securities and Exchange Commission on April 10, 2017.[11] The stockholders of R.R. Donnelley never approved the Compensation Program.[12]

On October 18, 2018, the law firm of Newman Ferrara LLP ("Counsel" or "Plaintiff's Counsel") sent a letter (the "Letter") to the Board.[13] Plaintiff's Counsel stated in the Letter that the Letter's purpose was "to suggest that the [Board] take corrective action to address excessive director compensation as well as

---

[8] *Id.* ¶ 4.

[9] *Id.* ¶¶ 5, 18.

[10] *Id.* ¶ 19.

[11] *Id.* ¶ 19.

[12] *Id.* ¶ 21.

[13] Transmittal Aff. of Lilianna Anh P. Townsend in Support of Defs.' Opening Br. in Support of Their Mots. to Dismiss the Compl., D.I. 13 ("Townsend Aff."), Ex. 1 ("Letter").

compensation practices and policies pertaining to directors."[14]  The Letter focused on the Compensation Program as revised and instituted at the time of the 2016 spinoffs.[15]

According to the Letter, the Company's Compensation Program paid non-employee directors at rates grossly in excess of comparative companies in the market.[16]  In total, non-employee directors averaged "in excess of $300,000 per annum, *each*, since 2013."[17]  The Letter states that this salary represents an amount more than two times the average for companies with similar market caps.[18]  The Letter argues:

> By any measure, the compensation awarded to the Company's non-employee directors is (and by all indications will continue to be) excessive in comparison to the Company's peers.  Further, against the backdrop of the Company's pre-Spinoff revenue declines and losses and the subsequent shrinking of the Company by way of the Spinoff, its compensation policies and practices are all the more egregious.[19]

---

[14] *Id.* at 1.

[15] *Id.* at 1–2.

[16] *See id.* at 2.  The Letter states that the Compensation Program provides non-employee directors with annual cash retainers of $105,000, equity retainers valued at $140,000, and an opportunity to receive up to $25,000 per committee membership or $75,000 for a committee chair position.  *Id.* The Compensation Program also provides the Chair of the Board with an additional $75,000 for the position.  *Id.*

[17] *Id.*

[18] *Id.* ("In relation to its microcap peers, RR Donnelley's average total non-employee director compensation stands at a level *more than double* the average.").

[19] *Id.*

The Letter cites *In re Investors Bancorp, Inc. Stockholder Litigation*.[20] In that case, our Supreme Court allowed claims to proceed challenging director compensation decisions by a board in accord with a stockholder-approved, discretionary equity incentive plan.[21] The Supreme Court held that "when it comes to the discretion directors exercise following stockholder approval of an equity incentive plan, ratification cannot be used to foreclose the Court of Chancery from reviewing those further discretionary actions when a breach of fiduciary duty claim has been properly alleged."[22] The Letter cautions that in light of the Supreme Court's ruling, "the Company is more susceptible than ever to shareholder challenges unless it revises or amends its director compensation practices and policies."[23] According to the Letter, this vulnerability arises because the Compensation Program "lacks any meaningful limitations with regard to cash and equity awards, allows for too much discretion by the Board, and has not been approved by RR Donnelley shareholders."[24]

The Letter concludes by suggesting "immediate remedial measures to address these issues, including, but not limited to setting meaningful limits or targets for

---

[20] 177 A.3d 1208 (Del. 2017).

[21] *Id.* at 1222.

[22] *Id.*

[23] Letter, at 2.

[24] *Id.* at 2–3.

6

overall compensation, improving current stock-ownership guidelines, and adopting meaningful governance reforms regarding non-employee director compensation."[25] Should the Board fail to take these remedial measures, the Letter states that the Plaintiffs would make use of "all available shareholder remedies."[26]

The Letter also includes, at the beginning, a footnote:

Please be advised that nothing contained herein shall be construed as a pre-suit litigation demand under Delaware Chancery Rule 23.1. This letter is intended only as a good-faith attempt to encourage corrective action by the Board. We do not seek or expect the Board to initiate any legal action against its members. Further, any rights and/or remedies our client or any other RR Donnelly shareholder may have are specifically reserved and nothing contained herein shall be deemed a waiver of those rights and/or remedies.[27]

In response to the Letter, the Board retained Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden") and initiated an investigation.[28] On December 21, 2018, after the Board concluded its investigation, it sent a response to the Plaintiffs (the "Response Letter").[29] The Response Letter treated the Plaintiff's Letter as a demand under Rule 23.1.[30] The Response Letter recounted the Board's responsive actions,

---

[25] *Id.* at 3.

[26] *Id.*

[27] *Id.* at 1 n.1 (emphasis in original).

[28] Townsend Aff., Ex. 2. ("Response Letter"), at 1.

[29] Response Letter.

[30] *Id.* at 2 ("As an initial matter, the Board views [the Plaintiffs'] October 18, 2018 letter as a 'demand' made pursuant to Court of Chancery Rule 23.1").

which included a review of public and private documents and interviews with the Chairman of the Board and the Company's independent compensation consultant, Willis Towers Watson.[31] The Response Letter concluded that "the Board unanimously resolved that it would be in the best interests of the Company not to authorize commencement of a civil action or further changes to the [Compensation Program] in response to the [Letter]."[32]

The Plaintiffs filed their Complaint on February 20, 2019, asserting three causes of action based on the alleged excessive compensation: breach of the fiduciary duty of loyalty, unjust enrichment, and waste of corporate assets.[33] The Complaint contained the same allegations regarding the Compensation Program as the Letter. However, the Complaint did not include or inform this Court that the Plaintiffs had sent the Letter to the Board. Instead, the Complaint alleged demand futility, noting that "Plaintiffs declined to serve a litigation demand on the Board because it is readily apparent that such an effort would have been futile . . ."[34]

---

[31] *Id.* at 2–4.

[32] *Id.* at 5–6.

[33] Compl., ¶¶ 37–50.

[34] *Id.* ¶ 33.

The Defendants moved to dismiss on May 21, 2019. After briefing, I heard oral argument on October 16, 2019. I considered the matter fully submitted on October 30, 2019.[35] This Decision follows.

## II. ANALYSIS

For the purposes of deciding the Defendants' Motion to Dismiss, I consider all well-pled facts in the Complaint as true.[36] The Defendants have moved to dismiss under Rule 23.1, or, in the alternative, Rule 12(b)(6).[37] Because I find dismissal warranted under Rule 23.1, I do not address the Defendants' arguments regarding failure to state a claim under Rule 12(b)(6).

Directors, not stockholders, "manage the business and affairs of every corporation."[38] Derivative litigation, therefore, "impinges on the managerial freedom of directors."[39] Any potential litigation is a chose-in-action, an asset of the company under directorial control. In deference to the directors' authority, Rule 23.1 and our case law impose a choice on stockholders who would bring derivative

---

[35] As previously noted, the parties put me on notice at argument that Vice Chancellor McCormick would be issuing an opinion on a similar set of facts in *Solak ex rel Ultragenyx Pharmaceutical, Inc. v. Welch*, C.A. No. 2018-0810-KSJM, and with the agreement of the parties I delayed taking the matter under consideration until that opinion issued. *See Solak ex rel Ultragenyx Pharmaceutical, Inc. v. Welch*, 2019 WL 5588877 (Del. Ch. Oct. 30, 2019).

[36] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002).

[37] Ct. Ch. R. 23.1; Ct. Ch. R. 12(b)(6).

[38] *See* 8 *Del. C.* §141(a).

[39] *Aronson v. Lewis*, 472 A.2d 805, 811 (Del. 1984).

actions: either the stockholder must make a pre-suit demand on the board of directors, or the stockholder must plead with particularity why such a demand would be futile and should be excused.[40] These options are mutually exclusive. Moreover, if the stockholder does make a pre-suit demand, she "tacitly concedes" the board's ability to employ its judgment to consider the demand, and the board's decision regarding the demand is thus subject to business judgment review.[41] In light of this, a stockholder's decision to submit a pre-suit demand in derivative litigation is a weighty one.

The Defendants' motion boils down to a simple question: did the Plaintiffs submit a pre-suit demand by sending the Letter of October 18, 2018? If the Letter was a pre-suit demand, the Complaint—which purports to plead demand futility— must be dismissed, so long as the Board's response to the Letter was adequate under business judgment review. The Plaintiffs argue that the Letter is not a demand for two reasons: (1) the Letter itself recites that it is not a demand, and (2) the Letter does not request legal action from the Board. The Defendants, who carry the burden on this issue, argue that the Letter is a pre-suit demand and that because they

---

[40] Ct. Ch. R. 23.1(a); *Spiegel v. Buntrock*, 571 A.2d 767, 772–73 (Del. 1990).

[41] *Spiegel*, 571 A.2d at 777 ("By electing to make a demand, a shareholder plaintiff tacitly concedes the independence of a majority of the board to respond. Therefore, when a board refuses a demand, the only issues to be examined are the good faith and reasonableness of its investigation."); *Busch ex rel. Richardson Elecs., Ltd. v. Richardson*, 2018 WL 5970776, at *8 (Del. Ch. Nov. 14, 2018).

adequately responded, dismissal is proper.  The Plaintiffs, I note, do not attempt to plead that the Defendants wrongfully refused their demand.

As mentioned, this Court recently decided a case, *Solak ex rel Ultragenyx Pharm. Inc. v. Welch*,[42] which featured a nearly identical situation.  Although the parties were different, the same counsel brought the same arguments regarding a nearly-identical letter to the board of directors of a different company.  Vice Chancellor McCormick held that such a letter constituted a pre-suit demand under Rule 23.1 and on this ground dismissed the complaint.  I adumbrate her reasoning below, because I cannot improve upon it; interested readers should consult the original.  Because I find the *Ultragenyx* reasoning sound, I adopt and apply it here.

As an initial matter, the Court in *Ultragenyx* noted that "Delaware law is quite strict as to the application of Chancery Rule 23.1," and therefore was not persuaded that a footnote stating the letter was not a demand meant the letter was not a demand.[43]  Instead, the Vice Chancellor conducted an objective evaluation of the letter in the context of the litigation.

The Court addressed the relevant standard under *Yaw v. Talley*.[44]  Under *Yaw*, a communication constitutes a demand if it communicates "(i) the identity of the

---

[42] 2019 WL 5588877 (Del. Ch. Oct. 30, 2019).

[43] *Id.* at *5 (quoting *FLI Deep Marine LLC v. McKim*, 2009 WL 1204363, at *3 (Del. Ch. Apr. 21, 2009)).  Surrealists and their adherents have likewise processed this argument: *see* note 1, *supra.*

[44] 1994 WL 89019 (Del. Ch. Mar. 2, 1994).

11

alleged wrongdoers, (ii) the wrongdoing they allegedly perpetrated and the resultant injury to the corporation, and (iii) the legal action the shareholder wants the board to take on the corporation's behalf."[45] The parties' dispute in *Ultragenyx* focused— as it does here—on the third element in the *Yaw* test. Citing our case law, the Court found that a pre-suit communication need not expressly demand litigation in order to constitute a demand under Rule 23.1.[46] Rather, "strong overtures of litigation," including stating the need for "immediate remedial measures," warning the company of susceptibility to shareholder challenges and the legal basis for those challenges, and further warning that the plaintiff would "consider all available shareholder remedies" if no action was taken, added together, satisfied the third element of the *Yaw* test.[47] The *Ultragenyx* Court therefore held that the letter there satisfied the elements in *Yaw* and constituted a pre-suit demand.[48]

The Court also noted two additional factors supporting this conclusion. First, the complaint, when it arrived, was "nearly a carbon copy of the Letter," making it likely that the letter served the notice function of a pre-suit demand.[49] Second, the

---

[45] *Id.* at *7.

[46] *Ultragenyx*, 2019 WL 5588877 at *5 (citing *Herd v. Major Realty Corp.*, 1990 WL 212307, at *8 (Del. Ch. Dec. 21, 1990)).

[47] *Id.* at *6.

[48] *Id.*

[49] *Id.*

letter sought remedial measures largely in line with "benefits commonly achieved in derivative lawsuits challenging non-employee director compensation," thus making it more likely that the board would comprehend it as a pre-suit demand.[50]

Finally, the Court evaluated the plaintiff's argument from *Yaw*—which the Plaintiffs make here as well—that if a stockholder communication is ambiguous, it "ought not to be considered a demand within the meaning of Rule 23.1."[51] Otherwise, the plaintiff argued, a chilling effect would discourage stockholders from attempting to resolve issues outside the courts.[52] While recognizing the "sound policy" present in this argument, the Court found that ambiguity did not favor the plaintiff because he was engaged in "tactical wordsmithing" intended to exploit the plaintiff-friendly presumption.[53]

Because I find the reasoning in *Ultragenyx* sound, I follow it here. The facts in this case, including the Letter at issue, are virtually identical. Even the issue—

---

[50] *Id.* at *7.

[51] *Yaw v. Talley*, 1994 WL 89019, at *8 (Del. Ch. Mar. 2, 1994).

[52] *Id.* To the extent the Plaintiffs make the same policy-based argument here, I reject it for the same reasons. I also note that the argument is in effect an allegation that our courts have gotten the fundamental policy balance inherent in our treatment of litigation demands wrong, improvidently chilling communications that might obviate litigation out of undue respect for the interest of directors in efficient management of the entity. Such arguments to a trial judge are misplaced. For a discussion on this issue, see *Ultragenyx*, 2019 WL 5588877 at *7 n.62.

[53] *Ultragenyx*, 2019 WL 5588877 at *8. The Court noted that the plaintiff had already received a ruling from a New York court holding a substantially similar letter to be a pre-suit demand, and the current letter was an attempt to "dress down" what that court had ruled a demand. *Id.* (citing *Solak v. Fundaro*, Index No. 655205/2017, slip op. (N.Y. Sup. Ct. Mar. 19, 2018)).

director pay—is the same. Only the identity of the Defendants and the amount of the directors' allegedly unreasonable salaries differ. Therefore, I see no reason to depart from the holding in *Ultragenyx*. I find the Letter here constitutes a pre-suit demand. Having made such a demand, and having received a response from the Board determining not to pursue litigation, the Plaintiffs are required to allege with particularity why the Board wrongfully refused.[54] Given that the Complaint did not acknowledge that the Board made a response, much less plead why the Board acted with gross negligence or bad faith in refusing the demand, the Complaint fails to comply with Rule 23.1 and must be dismissed.[55]

Under Delaware law, a stockholder plaintiff bringing a derivative suit has two options: make a pre-suit demand on the board, or plead demand futility. The pre-suit demand—if properly rejected—leads to a higher pleading burden. These options are mutually exclusive:[56] a stockholder is not permitted to have his cake and litigate it, too. *Yaw* provides, however, that sincere stockholder attempts to review issues with a board, which might be construed to constitute an ambiguous demand,

---

[54] *See Espinoza ex rel. JPMorgan Chase & Co. v. Dimon*, 124 A.3d 33, 36 n.10 (Del. 2015).

[55] *See City of Tamarac Firefighters' Pension Tr. Fund v. Corvi*, 2019 WL 549938, at *6 (Del. Ch. Feb. 12, 2019). I find that the Response Letter from the Board adequately fulfilled the Board's duties under a business judgment review. It initiated an investigation, reviewed documents, conducted interviews with board members and consultants, and then offered the reasons supporting its decision not to pursue litigation in response to the Letter.

[56] *Levit v. Shrontz*, 1992 WL 81228, at *5 (Del. Ch. Apr. 20, 1992).

14

are subject to an inference against the communication being considered a demand for reasons of public policy. Here, by contrast, the Plaintiffs crafted a communication intended to spur the Board to the same action it would take in response to an explicit demand, although simultaneously attempting to skirt through clever draftsmanship the tacit concession that results from making such a demand. This was a conscious attempt to make a pre-suit demand without consequence, and as such does not invoke equity's plaintiff-friendly deference to ambiguous communications under *Yaw*.

## III. CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss the Complaint is granted. The parties should submit an appropriate form of order.

15