IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| LI "DAVID" YI, derivatively in his capacity as a member of WU LIAO, LLC, <br><br>      Appellant, <br><br>    v. <br><br> WU LIAO, LLC, XCJ FT LLC, THE XCJ CORP., CALEB WANG, JENNIFER LIAO, <br><br>      Respondents, <br><br> THE XCJ LLC, XIAO CHI JIE CORP., IMAGINARY VENTURE CAPITAL MANAGEMENT, LP, and JOHN DOES 1 through 10, <br><br>      Defendants. | No. 86512-9-I <br><br> DIVISION ONE <br><br> UNPUBLISHED OPINION |

HAZELRIGG, A.C.J. — Li "David" Yi appeals from orders that granted dismissal of his derivative member claims for impermissible self-dealing against Wu Liao LLC, related corporate entities, and individual defendants, and denied his motion for reconsideration. Because Yi failed to establish standing for his derivative claims, the trial court did not err in its order of dismissal and we affirm.

FACTS

In 2017, Caleb Wang and Jennifer Liao planned to open a "fast-casual" restaurant in Bellevue called "XCJ," which would serve pan-fried dumplings.

Wang, Liao, and Norman Wu, formed Wu Liao LLC to "license certain intellectual property and run a single location of a larger franchise restaurant." David Yi was a friend of Liao's who was offered an opportunity to invest in the business. Yi made two investments in Wu Liao totaling $70,000.

Several sections of the Wu Liao operating agreement are relevant to this litigation. As an initial matter, it established Yi as a "Class A" member of the limited liability company (LLC) and Wang and Liao as managers. Section A.1 establishes the purpose of Wu Liao which, again, is to "license certain intellectual property and run a single location of a larger franchise restaurant." Class A members have limited voting rights pursuant to sections B.4.6 and B.4.6.10 "to approve the following matters: . . . Sell, lease, exchange, or otherwise dispose of all, or substantially all, of the limited liability company's property, other than in the ordinary course of the limited liability company's activities or activities of the kind carried on by the limited liability company." Section B.5.4 provides that the managers "have all necessary power to manage and carry out the Company's purposes, business, property, and affairs," but this authority is limited by section B.4.5 which requires these actions have prior approval of all Class A and Class B members.

The business was successful when it opened in 2018, but it was later impacted by the COVID-19[1] pandemic. Yi later asserted in his complaint that he approved of the efforts undertaken in April 2020 to reorient the Wu Liao business model towards online orders and a "direct to consumer" (DTC) model. In March

---

[1] 2019 novel coronavirus infections disease.

2021, Wang, on behalf of the "XCJ Team," e-mailed investors to tell them the DTC model was compensating for the decline of in-store customers. In December 2021, Wang sent another e-mail to investors to inform them that Wu Liao was planning to undergo "some overdue entity clean up work to properly separate this restaurant, other restaurants, and online into their respective spots."

The restructuring transaction was described in a joint action statement sent to all of Wu Liao's managers and members in January 2022 that outlined the plan to create two new LLCs: The XCJ LLC and XCJ FT. The XCJ LLC was designated as the operating company and XCJ FT as the holding company. As part of the transaction, Wu Liao contributed a variety of assets to The XCJ LLC in exchange for full interest in the company, recipes, the XCJ domain name and trademark, kitchen equipment, and the lease agreement for the restaurant's physical location. Wu Liao's full interest in The XCJ LLC was then transferred to the holding company, XCJ FT, in exchange for full interest in XCJ FT. Thus, Wu Liao's interest in the operating company, The XCJ LLC, existed via the holding company, XCJ FT. The portion of the business that had been designated as the DTC endeavor was going to be spun off and operated separately by a group that mostly consisted of the Wu Liao managers who had initiated the restructuring: Wang, Liao, and Wu.

This restructuring occurred by way of a joint action, purportedly with the written consent of all the managers and members except for Yi. Once Yi made his opposition known, the parties engaged in settlement discussions that were ultimately fruitless. Yi claimed to have communicated his concerns to Wang and Liao, through counsel, "for over a year . . . includ[ing] multiple emails, letters, phone

- 3 -

calls, and videoconferences" between counsel for each party. Yi also asserted that he contacted Imaginary Venture Capital Management regarding his concerns. Imaginary Venture was an investor alleged to have become involved around the time of the restructuring transaction, but Yi averred in his complaint that it declined to act because "it agreed with [d]efendants' position that the transfer was proper."

Before filing the current case in King County Superior Court, Yi briefly pursued the matter in federal court and presented substantially similar causes of action to those he ultimately filed in state court. A key distinction, however, was that Yi expressly alleged in his June 2023 federal complaint that any demand for the company to initiate a lawsuit ought to be excused as futile because the managers who would review the demand claim were on both sides of the transaction, were not disinterested, and thus, could not provide an unbiased and fair answer to his demand. In support of his assertion of demand futility, Yi contended that his attempts to have his concerns addressed informally were unsuccessful. Yi specifically alleged that nothing could be gained from demanding Wang and Liao pursue litigation because they were who Yi had accused of impropriety. Ultimately, Yi moved to voluntarily dismiss the federal complaint on August 8, 2023, before Wu Liao filed its answer.[2]

On August 28, 2023, Yi served counsel for Wu Liao with a demand letter via e-mail. These communications made a demand upon Wu Liao's managers, Wang, Liao, and Wu, "to pursue claims" against Wang, Liao, their associated

---

[2] Wu Liao had appeared in the federal case by August 2023, however, and moved to stay discovery pending motions to dismiss. Yi filed a response to the motion to stay, but then filed his notice of voluntary dismissal four days later.

business entities, and investors "for their wrongdoing arising from the improper transfer of the Company's direct-to-consumer ('DTC') business to the XCJ entities." Yi's demand further stated that Wang and Liao were already familiar with the "substance of the relief Mr. Yi [was] demanding" and provided less than a month to evaluate Yi's demand before he would file a derivative action, taking their silence as an implicit refusal. Wu Liao formed a special litigation committee to investigate Yi's claims and consulted with outside counsel to review his demand. "Based on the results of the Committee's investigation," Wu Liao declined Yi's demand. The committee's decision was communicated to Yi's counsel by e-mail on September 29.

Yi filed the complaint in the instant case on October 3 and attached as exhibits copies of the operating agreement, joint action, demand, and the committee's rejection of his demand. Yi's primary contention was that his demand was wrongfully denied because the managers who conducted the restructuring transaction had also served on the special litigation committee, and thus, could not offer him a fair, impartial response. Wu Liao moved to dismiss the complaint, arguing that it "suffer[ed] from fundamental defects," mainly that Yi had failed to establish standing. A declaration in support of the motion to dismiss proffered as exhibits many of the same documents that Yi had filed, as well as e-mails from the managers to members, a copy of Yi's federal complaint, and the docket from that case. A separate but simultaneous motion to dismiss and accompanying declaration were filed on behalf of Wang, Liao, The XCJ Corp., and XCJ FT, and made substantially similar arguments to the Wu Liao motion to dismiss, along with

arguments under CR 12(b)(6).  Yi filed a consolidated response to both motions and a declaration in support thereof.  The trial court held a hearing on February 2, 2024 that addressed the primary issues of Yi's standing to bring a derivative suit and whether the allegations in his complaint were pleaded with sufficient particularity to survive the motions to dismiss.

On February 9, the trial court issued its order and dismissed Yi's derivative claims for lack of standing.  The dismissal order expressly stated that "the Complaint does not plead facts to challenge the 'procedures employed by the board in making its determination' to overcome the business judgment rule, or to otherwise demonstrate the Managers wrongfully refused the Demand," and further concluded that "Plaintiff's failure to establish derivative standing by pleading with particularity that the demand was wrongfully refused is a fundamental defect."  Yi's minority member oppression claim was also dismissed on the basis that no such cause of action is recognized in Washington in the context of LLCs.[3]  Both parties sought reconsideration of the order on dismissal and both motions were denied.  Wu Liao sought an award of attorney fees and costs, which Yi opposed, but the trial court ultimately declined to award them because it found that Wu Liao had not provided information sufficient for the court to determine the reasonableness of the fee request.

Yi timely appealed.[4]

---

[3] Yi did not appeal the dismissal of his minority member oppression claim.
[4] The sole respondents' brief on appeal was filed on behalf of Wu Liao, The XCJ Corp., XCJ FT, and Wang and Liao as individual defendants.

ANALYSIS

I.      Standing for Derivative Complaint

The trial court granted Wu Liao's motion to dismiss and granted in part Wang, Liao, The XCJ Corp., and XCJ FT's motion to dismiss only as to Yi's minority member oppression claim.[5]  Wu Liao's motion was largely premised on CR 23.1 and the plain language of RCW 25.15.396; the remaining defendants presented similar arguments and further relied on CR 12(b)(6).  Yi does not appeal the dismissal of his minority member oppression claim, thus we focus solely on the dismissal of the claims against Wu Liao based on Yi's failure to establish standing.

"Standing generally refers to a particular party's right to bring a legal claim." *Wash. State Hous. Fin. Comm'n v. Nat'l Homebuyers Fund, Inc.*, 193 Wn.2d 704, 711, 445 P.3d 533 (2019).  "Standing is a threshold issue, which we review de novo." *In re Est. of Becker*, 177 Wn.2d 242, 246, 298 P.3d 720 (2013); *see also Bavand v. OneWest Bank*, 196 Wn. App. 813, 834, 385 P.3d 233 (2015). Derivative actions against LLCs are permitted under Washington law.  *See* CR 23.1; RCW 25.15.386, .396.  However, "[d]erivative suits are disfavored and may be brought only in exceptional circumstances." *Haberman v. Wash. Pub. Power Supply Sys.*, 109 Wn.2d 107, 147, 744 P.2d 1032, 750 P.2d 254 (1987).  Toward that end, RCW 25.15.386 explains as follows who may bring such an action and how it must be pursued:

> A member may bring a derivative action to enforce a right of a limited liability company if:
>       (1) The member first makes a demand on the members in a member-managed limited liability company, or on the managers of a

---

[5] The trial court denied Wang, Liao, The XCJ Corp., and XCJ FT's motion to dismiss as to all other causes of action, including breach of contract, breach of fiduciary duty, and conversion.

manager-managed limited liability company, requesting that they cause the limited liability company to bring an action to enforce the right, and the managers or other members do not bring the action within a reasonable time; or
     (2) A demand would be futile.

RCW 25.15.396 further specifies the following necessary contents of the complaint as it relates to the demand made by the plaintiff: "In a derivative action, the complaint must set forth *with particularity*: (1) The date and content of plaintiff's demand and *the members' or managers' response to the demand*; or (2) Why a demand should be excused as futile." (Emphasis added.)

The use of "or" in the statute clearly establishes that demand and futility are alternate procedural paths to supporting a derivative cause of action. The would-be plaintiff can serve the members or managers with the demand, leaving the decision to pursue the claim in their hands, and later argue wrongful refusal if the managers decline to pursue it. Or, they may choose to forego demand and assert in their complaint that it should be excused as futile because the manager and members cannot give an unbiased answer. CR 23.1 provides further guidance and reads in relevant part,

> In a derivative action brought by one or more shareholders or members . . . [t]he complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort. The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association.

Yi's primary challenge on appeal flows from the trial judge's application of a Delaware case, *Spiegel v. Buntrock*, 571 A.2d 767 (Del. 1990), at the urging of

Wu Liao. He argues that *In re F5 Networks Inc.*, 166 Wn.2d 229, 207 P.3d 433 (2009), the opinion of our Supreme Court that adopted and applied *Spiegel*, was limited in scope and the trial court here exceeded that narrow application. In his opening brief, Yi reads the questions raised by *F5 Networks* restrictively and asserts that Wu Liao's interpretation of the case

> misreads the extent to which Washington courts must adopt Delaware law as well as the holding in *F5 Networks*, which addressed only two narrow questions: (i) whether Washington would follow Delaware—and many other states—in permitting litigants to plead "demand futility" (*i.e.*, that demand is excused because the managers/board of the company are conflicted) as an alternative to making demand, and (ii) whether the Delaware Court of Chancery's decision in *Ryan v. Gifford*, 918 A.2d 341 (Del. Ch. 2007) would help guide the analysis as to whether such conflicts existed.

At oral argument before this court, Yi clarified his position regarding *F5 Networks* and noted that it "does not address demand refusal cases," but does establish that "Washington is a demand futility state."[6] He also conceded Washington courts do and should look to Delaware law for guidance on matters related to corporate law, and further asserted "it was not just improper [for the trial court] to rely on *Spiegel*, it was improper to not rely on *Scattered*[7] and *Scattered*'s progeny."[8] Yi contends the trial judge misapplied Delaware authority here, resulting in the improper dismissal for lack of standing.

Wu Liao responds that the dismissal was proper because the trial court correctly determined Yi failed to plead with adequate particularity in order to

---

[6] Wash. Ct. of Appeals oral arg., *Yi v. The XCJ LLC*, No. 86512-9-I (Jan. 22, 2025), at 3 min., 0 sec., *video recording by* TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2025011476.

[7] *Scattered Corp. v. Chicago Stock Exchange, Inc.*, 701 A.2d 70 (Del. 1997), *overruled in part by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).

[8] Wash. Ct. of Appeals oral arg., *supra*, at 3 min., 44 sec.

establish standing to bring his claims and that the special litigation committee's denial of Yi's demand was entitled to the protection of the business judgment rule, and appropriately considered Wu Liao's contention that the refusal of Yi's demand was in good faith.

### A. Alternate Means To Pursue Derivative Action

Yi reads the trial court's interpretation of Delaware law set out in the dismissal order as erroneously imposing a rule that "once a shareholder or a member makes demand, such shareholder or member can no longer challenge the independence of the board/managers for any purpose." He avers that Delaware law is in fact more permissive; a plaintiff can make a demand knowing it may be wrongfully refused and then may argue facts that would support their contention that the managers did not give good faith consideration to the demand. In particular, he relies on two Delaware cases: *Scattered* and *Grimes v. Donald*, 673 A.2d 1207 (1996), *overruled in part by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).[9] However, the holdings of these cases are not so permissive as to allow Yi to prevail and, in fact, support the trial court's ruling that he failed to plead with adequate particularity.

At oral argument before this court, Yi asserted that *Scattered* stands for the proposition that *Spiegel* was circumvented by later developments in Delaware law

---

[9] Yi correctly notes that *Brehm* overruled *Grimes* and *Scattered Corp.* solely as to the standard of review employed when reviewing the dismissal of a derivative suit. *Brehm*, 746 A.2d at 253. Yi also offers *City of Tamarac Firefighters' Pension Trust Fund v. Corvi,* 2019 WL 549938 (Del. Ch. Feb. 12, 2019) (unpublished). However, as an unreported foreign case, it offers no precedential value in Washington and only limited persuasive value because it is not controlling authority even in Delaware.

and emphasizes that the process that led to refusal of a demand may still be interrogated.[10]  In briefing, Yi made similar assertions regarding *Grimes.*  In *Grimes,* the stockholder demanded the board of the company abrogate the employment agreement with the chief executive officer, but the board refused the demand after it was considered by the "Compensation Committee," an outside benefits consultant, and independent legal counsel.  673 A.2d at 1211-1212.  Ultimately, the court held that Grimes had failed "to include particularized allegations which would raise a reasonable doubt that the Board's decision to reject demand was the product of a valid business judgment" and ruled in favor of the company.  *Id*. at 1220.

In *Scattered,* the corporation was a "securities broker-dealer" and member of the Chicago Stock Exchange that served the exchange with a demand to investigate alleged corruption.  701 A.2d at 71.  The board of the exchange "appointed a Special Committee" and, after it retained outside counsel, conducted interviews of "over 25 individuals" including those who purportedly had knowledge of the wrongdoing.  *Id.*  The board concluded that the claims of corruption "could not be substantiated" and declined to take any further action on the demand.  *Id.* at 71-72.  Scattered Corp. then brought a derivative suit alleging wrongful refusal.  *Id* at 72*.*  The court concluded that Scattered Corp. had not met its burden to allege in its complaint "particularized facts creating a reason to doubt the investigation of the demand was reasonable and conducted in good faith."  *Id.* at 77.

---

[10] Wash. Ct. of Appeals oral arg., *supra*, at 4 min., 8 sec.

Yi is correct that the plaintiff corporation in *Scattered* was allowed to argue that its demand had been wrongfully refused, even if it had suspected that this would be the outcome, because the allegations in the demand implicated, at least in part, the same people who would review the demand. However, these suspicions were not enough for it to prevail. The Delaware court ultimately concluded that Scattered Corp. had failed to meet its burden; the complaint was not pleaded with sufficient particularity to overcome the deference courts give to internal corporate decision-making. *Id.* Despite Yi's selective quotation of *Grimes* and *Scattered* in briefing, a careful read of these cases establishes that both courts allowed plaintiffs to argue wrongful refusal, but in doing so the cases are in accord on the proposition that once a demand has been made, allegations of wrongful refusal must be supported by evidence, not mere conclusory statements, in order to raise reasonable doubt that the denial was not in good faith. *Grimes,* 673 A.2d at 1220; *Scattered*, 701 A.2d at 75.

However, Yi overlooks the more basic fact that our demand statute provides two distinct channels by which to pursue derivative claims. "In a derivative action, the complaint must set forth with particularity: (1) The date and content of plaintiff's demand and the members' or managers' response to the demand; *or* (2) Why a demand should be excused as futile." RCW 25.15.396 (emphasis added). Having made a demand, the plaintiff is free to bring particular allegations to support their position that demand has been wrongfully refused, but because the statute requires plaintiff to elect a theory of demand wrongfully refused *or* demand futility, supporting allegations must necessarily fall under one category or the other. The

plain language of the statute establishes that a complaint must either plead that a demand was wrongfully refused, supported by specific allegations of inadequate or bad faith procedures, or demand is excused based on futility, substantiated with particular assertions that there was no way the managers could fairly consider the demand, therefore justifying the failure to make one.

The bedrock of Yi's claim is that Wang and Liao had conflicts of interest with regard to the restructuring transaction that prevented them from giving him an unbiased answer to his demand. However, this contention appears to conflate the two alternate means to establish standing for a derivative suit. Yi avers that Wang and Liao were so irredeemably conflicted that making a demand to them would be futile, yet he presents this argument *after* doing precisely that; entrusting them, along with other managers, with his demand and the determination of whether to accept or reject it. This procedural posture is more confounding when considered in light of the fact that this tactical approach to the litigation in state court occurred *after* making that precise futility claim about the same managers in the federal suit that he voluntarily withdrew. Yi fails to reconcile his position on appeal with the strategic choices he made in filing his complaint; once he made demand, argument regarding futility was effectively abandoned and his burden was to establish that the manner by which the decision to reject his demand was reached in bad faith or as the result of inadequate procedures. The very case he urges this court to follow, *Scattered*, expressly holds that once a demand is made, argument as to futility is waived: "If the stockholders make a demand, as in this case, they are

deemed to have waived any claim they might otherwise have had that the board cannot independently act on the demand." 701 A.2d at 74.

The consequence of this strategic litigation decision is that Yi was left with one means of establishing standing, wrongful refusal of his demand, and he simply failed to make that showing. He presents only a single assertion regarding the process by which Wu Liao responded to his demand, that the litigation committee could not give him an unbiased answer because Wang and Liao were part of it. This is a futility argument. His bare allegations against Wang and Liao as individuals may be sufficient to cast doubt on the committee's ability to reach an unbiased decision on his demand, but this doubt is resolved by the committee's reliance on the recommendation of outside counsel. Yi does not argue with particularity how Wang and Liao's new positions as managers of the recently formed holding company, XCJ FT, which resulted from the restructuring transaction and creation of the holding and operating companies, prevented them from acting impartially on the recommendation of outside counsel. His sole argument in the trial court and now on appeal is that they could not be fair because they "stood on both sides of the challenged transaction." This is not enough to carry his burden with regard to particularity. *See Thorpe v. CERBCO, Inc,* 611 A.2d 5, 11 (Del. Ch. 1991) (reasonable doubt created as to board's response when it failed to act or reply to stockholder after special litigation committee had made its report); *Rich v. Yu Kwai Chong,* 66 A.3d 963, 965 (Del. Ch. 2013) (derivative action allowed to proceed when "[d]efendants not only failed to respond to the demand over the next two years, but allegedly took actions making a meaningful

response to the demand unlikely if not impossible"). Yi does not identify any deficiency in the process utilized by the special litigation committee in responding to his demand that undermined its decision, apart from the presence of certain members.

The trial court's characterization of the fundamental defect of Yi's complaint remains correct. He failed to plead sufficient facts to support his allegation that the procedure the managers used to arrive at their decision to deny his demand was inappropriate or inadequate and, therefore, not protected by the business judgment rule.

B.      Business Judgment Rule

The business judgment rule protects management from liability stemming from a transaction "'where a reasonable basis exists to indicate the transaction was made in good faith.'" *Bangerter v. Hat Island Cmty. Ass'n*, 199 Wn.2d 183, 192, 504 P.3d 813 (2022) (internal quotation marks omitted) (quoting *Shinn v. Thrust IV, Inc.*, 56 Wn. App. 827, 833, 786 P.2d 285 (1990). The board and managers of a corporation "make decisions like whether to file a lawsuit." *F5 Networks*, 166 Wn.2d at 236. "Courts are reluctant to interfere with the internal management of corporations and generally refuse to substitute their judgment for that of the directors." *Nursing Home Bldg. Corp. v. DeHart*, 13 Wn. App. 489, 498, 535 P.2d 137 (1975). "Absent 'evidence of fraud, dishonesty or incompetence,' courts generally will not interfere with the judgment of corporate management." *Real Carriage Door Co. ex rel. Rees v. Rees,* 17 Wn. App. 2d 449, 459, 486 P.3d

955 (2021) (quoting *In re Spokane Concrete Prods., Inc.*, 126 Wn.2d 269, 279, 892 P.2d 98 (1995)).

Once a demand is made, the complaint in a derivative action must set out, with particularity, the demand and the managers' response. RCW 25.15.396. Because the managers have the authority to deny a demand, and the business judgment rule prohibits the court from substituting its own judgment absent certain exceptional circumstances, the trial court here needed to determine whether or not the denial was a protected decision. The business judgment rule, in tandem with the particularity requirements of RCW 25.15.396, require Yi to specifically demonstrate that his demand was refused dishonestly or on other grounds that would provide an exception to the general protection of the business judgment rule. But, RCW 25.15.396 is silent as to how a trial court determines if the particularity of the complaint is adequate and how those allegations interact with the protections of the business judgment rule.

The trial court here relied on *Spiegel* and its progeny for two propositions. First, quoting *Spiegel*, the trial court held "where a plaintiff makes a demand, he 'concedes the independence of the majority of the board to respond' to the demand and determine what is in the company's best interest." 571 A.2d at 773. Next, the court quoted *Barovic v. Ballmer*, 72 F. Supp. 3d, 1210, 1214 (W.D. Wash. 2014) to hold that a "subsequent decision by the directors or managers to refuse a pre-suit demand 'merits presumptive protection of the business judgment rule.'" Then, quoting *Spiegel*, 571 A.2d at 773, the court further held that this decision "will be

respected because the 'demand requirement is a recognition of the fundamental precept that directors manage the affairs of corporations.'"

The trial court's application of the business judgment rule to its analysis of Yi's demand was sound. Under the permissive holding of *F5 Networks*, we look to Delaware to supplement our rules regarding demand. 166 Wn.2d at 240. Yi's argument that *Scattered* and subsequent cases require a different outcome is unavailing, not only because *Speigel* was not limited or abrogated by *Scattered* as he asserted at oral argument, but also because *Scattered* expressly held that mere allegations were insufficient to satisfy the particularity requirement. There, the court held that

> plaintiffs' "facts" creating a reasonable doubt about the disinterestedness and independence of the [body reviewing the demand] are not facts at all. Rather, they are conclusory and speculative statements, suffering fatally from a paucity of particularization. Such conclusory statements will not suffice to cast a reasonable doubt upon the disinterestedness, good faith or reasonableness of the [reviewing body] in acting on the demand.

*Scattered*, 701 A.2d at 75 (footnote omitted). The rationale for the business judgment rule is paralleled by that underlying our statutory demand requirements; both provide deference to managerial decisions regarding corporate affairs and require plaintiffs to make a showing of bad faith, dishonesty, or some other appropriate grounds before the trial court will substitute its own judgment for that of corporate leadership. The showing required to overcome the business judgment rule will necessarily also satisfy the particularity our demand statute requires.

Here, while Yi makes a generalized assertion of bias against the managers, he does not challenge the impartiality of the outside counsel with whom the special

litigation committee consulted or the propriety of the committee's procedures. After explicitly pleading a theory of futility in federal court based on a purported conflict of interest, Yi made his demand on those same managers he would later again claim could not give him a fair answer. His failure to identify specific ways that this alleged partiality impacted their decision is fatal to his derivative cause of action. As the court in *Scattered* clearly held, a sweeping claim that the decisionmakers cannot be impartial is not enough after a demand has been made; Yi must demonstrate how that impartiality was manifest in their refusal. The trial court did not err when it dismissed Yi's claims based on his failure to establish standing.[11]

II.     Denial of Yi's Motion for Reconsideration

Yi sought reconsideration of the dismissal of his suit against Wu Liao, which was denied by the trial court. He designated the order denying reconsideration in his notice of appeal and mentions it in both his assignments of error and request for relief in his opening brief. However, Yi does not devote any portion of his brief to this issue; he fails to set out the standard of review for the denial of a motion for reconsideration, cite to controlling authority, or provide any argument as to why the denial was erroneous. We need not consider inadequately briefed issues. *Norcon*

---

[11] At oral argument, Yi asserted for the first time that the dismissal of his derivative claims with prejudice was improper and, if his complaint was inadequate, the proper remedy was to allow him an opportunity to amend and correct any deficiencies. Wash. Ct. of Appeals oral arg., *supra*, at 8 min., 42 sec.

However, CR 15(a) establishes that a party must seek leave of the court to amend after a responsive pleading has been served. There is no indication from the record before us that Yi moved to amend his complaint at any time before or during the hearing on the motions to dismiss, despite the fact that both motions expressly sought dismissal "without leave to amend." As such, Yi has waived any argument regarding the propriety of the court's dismissal with prejudice.

*Builders, LLC v. GMP Homes VG, LLC*, 161 Wn. App. 474, 486, 254 P.3d 835 (2011). As such, we decline to reach this assignment of error.

III.    Attorney Fees

Wu Liao requests an award of attorney fees on appeal and further asserts that the trial court wrongfully denied its request for fees. Wu Liao renewed its request for review of that denial at oral argument and asserted that it was reviewable because Wu Liao could raise the issue in its response brief.[12] However, Wu Liao did not clarify which rule would authorize appellate review under those circumstances. As Wu Liao did not cross appeal, or separately appeal, from the trial court's denial of its request for fees, it may not assign error under our Rules of Appellate Procedure and we decline to consider any argument on that issue.

Wu Liao does, however, comply with the procedural requirements for a fee request set out in our appellate rules by devoting a portion of its briefing to its request and citing the authority that supports an award, RAP 18.1. It asserts that it should prevail on appeal and be awarded those fees and costs on that basis. Thus, its request is granted, subject to Wu Liao's further compliance with the procedural requirements established in the RAP.

Affirmed.

WE CONCUR:

---

[12] Wash. Ct. of Appeals oral arg., *supra*, at 18 min., 12 sec.

- 19 -